Columbus Bar Association *v.* Brooks.

[Cite as *Columbus Bar Assn. v. Brooks* (1996), 75 Ohio St.3d 524.]

(No. 95–1218—Submitted November 8, 1995—Decided June 5, 1996.)

*Carlile, Patchen & Murphy* and *Robert B. Barnett, Jr.*; and *Bruce A. Campbell*, Columbus Bar Association Counsel, for relator.

*Walter G. Brooks, pro se.*

MOYER, C.J. This case demonstrates the importance of DR 9–102 and the necessity of preserving the identity of funds and property of a client. The rule against commingling a client's funds with those of his or her attorney was established to protect against the danger inherent in all cases that such comming-

ling will result in the loss of client money and the erosion of public trust in the legal profession.

Thomas paid respondent and Winkfield a retainer fee of $13,956. Thomas's claim was settled for $48,298. Respondent and Winkfield were entitled to receive $2,143.33 from the settlement proceeds, providing them with a total fee of $16,099.33. Instead, they kept $15,516 from the settlement proceeds and disbursed $32,782 to Thomas, who should have received $46,154.67. On January 5, 1996, over five years from the date of the settlement, Thomas received a check from Winkfield that may or may not be a final payment.[2]

Respondent asserts that after realizing his inadvertent "mistake" in calculating Thomas's settlement check, he made "a diligent and concerted effort to fully reimburse" his client. We find this assertion to be, at best, disingenuous. The actions of respondent regarding the repayment of his client's money seem more a diligent and concerted effort to evade his responsibility as an attorney than to settle a debt owed to a client.

Initially, Thomas pursued the issue of overpayment for several months before respondent finally acknowledged the debt to him in February 1991. Over the next five years, respondent continually stalled and evaded his obligation to fully reimburse Thomas the funds he was entitled to receive. The result was that Thomas was denied, and the respondent enjoyed, the use of a significant amount of money that belonged to Thomas during that lengthy period.

Given the length of time involved in the improper retention of the client's funds by respondent, we agree with relator that it would be difficult to imagine a more glaring violation of this provision of the Code of Professional Responsibility. Because the misconduct of the respondent is of such a serious nature, an actual suspension from the practice of law is warranted. Therefore, respondent is suspended from the practice of law in Ohio for one year with the last six months stayed upon condition that prior to the stay he provide full restitution plus interest at the judgment rate to Thomas. Any lighter sanction would be a message to the bar that a lawyer may wrongfully withhold a significant amount of funds owing to a client for an indeterminate amount of time and receive little more than an order from this court that the funds must be repaid with interest.

*Judgment accordingly.*

---

2. In his supplemental pleading regarding the payment of full restitution, Winkfield assures us that he has already completely repaid Thomas. Relator does not dispute this representation; however, Thomas was owed $3,906 as of the date of the panel hearing, and, since then, Winkfield has offered proof only for his payment of $906 to Thomas. Respondent, however, has offered no proof of any recent attempts to satisfy the obligation.

DOUGLAS, SHAW, RESNICK, F.E. SWEENEY, PFEIFER and COOK, JJ., concur.

STEPHEN R. SHAW, J., of the Third Appellate District, sitting for WRIGHT, J.