**[This opinion has been published in *Ohio Official Reports* at 75 Ohio St.3d 527.]**

COLUMBUS BAR ASSOCIATION *v*. WINKFIELD.

**[Cite as *Columbus Bar Assn. v. Winkfield*, 1996-Ohio-458.]**

*Attorneys at law—Misconduct—One-year suspension stayed, provided full restitution, with interest, is made to client—Failing to promptly pay funds client is entitled to receive.*

(No. 95-1219—Submitted December 6, 1995—Decided June 5, 1996.)

ON CERTIFIED REPORT by the Board of Commissioners on Grievances and Discipline of the Supreme Court, No. 94-87.

————————————

{¶ 1} Relator, Columbus Bar Association, charged respondent, Lawrence E. Winkfield of Columbus, Ohio, Attorney Registration No. 0034254, with having violated DR 9-102(B)(4) (failing to promptly pay funds client is entitled to receive). A panel of the Board of Commissioners on Grievances and Discipline of the Supreme Court ("board") heard the matter on April 6, 1995.

{¶ 2} The evidence submitted to the panel, including various stipulations, established that respondent and Walter G. Brooks[1] practiced law as a professional association, Winkfield & Brooks Co., L.P.A. ("the firm"). In January 1989, Elbert Tyrone Thomas retained Brooks to pursue an employment discrimination suit on his behalf. The fee contract signed by Brooks and Thomas required payment of a retainer and an hourly fee for Brooks's services; however, if the claim was settled, Brooks would retain one-third of the settlement amount and would reimburse Thomas for any fees previously advanced. Thomas agreed to a $48,298 settlement of his claim in October 1990, after he had already advanced at least $13,956 in

—————————

1. Brooks was also charged with professional misconduct. See *Columbus Bar Assn. v. Brooks* (1996), 75 Ohio St.3d 524, 664 N.E.2d 900.

attorney fees to the firm. He expected reimbursement in accordance with the fee contract, but his share of the settlement proceeds did not include the advanced amount.

{¶ 3} Thomas complained to a secretary at the firm when he picked up his settlement check. He also discussed the matter of reimbursement with Brooks on several subsequent occasions. In a letter dated February 15, 1991, Brooks acknowledged that Thomas was entitled to reimbursement in the amount of $13,956. He also paid Thomas $3,000 with checks from the firm and, apparently, promised to make installment payments until Thomas had been reimbursed in full.

{¶ 4} Brooks paid Thomas installments intermittently with checks from the firm until the firm dissolved in March 1993. Thereafter, he made several payments with his personal funds. Thomas received a total of $6,050 prior to the dissolution of the firm, but had received only an additional $400 by May 1994, at which time he filed his grievance with relator.

{¶ 5} Thomas contacted respondent around the end of 1993 in an effort to reach Brooks about the money still owed. Thomas advised respondent that he had yet to receive full reimbursement for the attorney fees advanced back in 1990. Respondent relayed Thomas's message to Brooks.

{¶ 6} In September 1994, Thomas applied to the Clients' Security Fund for payment of the funds retained by Brooks on behalf of the firm. His application spurred Brooks to pay him $3,000 in November 1994, $200 in December 1994, $200 in February 1995, and $200 in March 1995. At the time of the panel hearing, respondent had paid Thomas a total of $10,050, leaving a balance of $3,906 in unreimbursed fees.

{¶ 7} Brooks acknowledged before the panel the obligation to reimburse Thomas. He explained that there had been no funds available to repay Thomas in February 1991, when Brooks realized he had miscalculated Thomas's share of the

settlement proceeds. Brooks also represented to the panel that he had advised respondent of the debt owed Thomas at about the same time he discovered it.

{¶ 8} Respondent denied any concomitant knowledge of Thomas's claim for reimbursement, insisting that he learned of it for the first time in the fall of 1993, when Thomas requested his help in reaching Brooks. The panel, however, credited Brooks's testimony, which was corroborated by Thomas. Thomas testified that respondent had represented him in two personal injury claims in 1991 and 1992, that he had asked respondent in late 1991 and again in late 1992 to offset his fees against the reimbursement obligation owed by the firm, and that respondent had refused.

{¶ 9} The panel found that respondent had violated DR 9-102(B)(4). In recommending a sanction for this misconduct, the panel observed that respondent had not submitted evidence of mitigation. The panel recommended that respondent be suspended from the practice of law for one year, but that imposition of this sanction be suspended on the condition that respondent reimburse Thomas "approximately $3,000," with or without contribution from Brooks, by July 1, 1995.

{¶ 10} The board adopted the panel's findings of fact and conclusions of law as to respondent's misconduct. With respect to a sanction, the board stated:

"*** Based on the Respondent's willful failure to acknowledge the obligation owed the firm's client and the absence of remorse for his own misconduct, the Board recommends that Respondent, Lawrence E. Winkfield, be suspended from the practice of law in the State of Ohio for one year and ordered to make full restitution to the client."

———————————

*Carlile, Patchen & Murphy* and *Robert B. Barnett, Jr.*; and *Bruce A. Campell*, Bar Counsel, for relator.

*Charles W. Kettlewell*, for respondent.

———————————

*Per Curiam.*

{¶ 11} Upon review of the record and the objections filed by respondent, we concur that clear and convincing evidence establishes his violation of DR 9-102(B)(4). Respondent learned of Brooks's failure to return Thomas's overpayment of $13,956 in 1991 and is accountable pursuant to Gov.Bar R. III(3)(B) and (C).[2]

{¶ 12} However, we do not consider respondent's failure to admit or apologize for his wrongdoing a sufficient basis in this case for the board's enhancement of the sanction recommended by the panel. Accordingly, we decline to impose the one-year actual suspension period recommended by the board and adopt the panel's recommendation. We order that respondent receive a one-year suspension from the practice of law in Ohio, but that imposition of this sanction be suspended, provided that proof of full restitution, including interest at the judgment rate, is filed within ninety days of our judgment.[3] Costs taxed to respondent.

*Judgment accordingly.*

DOUGLAS, BROGAN, RESNICK, F.E. SWEENEY and PFEIFER, JJ., concur.

MOYER, C.J., and COOK, J., dissent.

JAMES A. BROGAN, J., of the Second Appellate District, sitting for WRIGHT, J. Columbus Bar Association v. Winkfield.

———————————

**COOK, J., dissenting.**

———————————

2. Under Gov. Bar R. III(3)(B) and (C), the shareholders, directors, and officers of a legal professional association may be held professionally responsible for known misconduct by the association's employees or agents.

3. In his supplemental pleading regarding the payment of full restitution, respondent assures us that he has already completely repaid Thomas. Relator does not dispute this representation; however, Thomas was owed $3,906 as of the panel hearing and, since then, respondent has offered proof only for his payment of $906 to Thomas.

{¶ 13} I respectfully dissent. The sanction recommended by the board of a one-year suspension from the practice of law and full restitution appears appropriate in light of Mr. Winkfield's conduct and his unwillingness to acknowledge his wrongdoing. The fact that a lawyer fails to accept responsibility for unethical conduct suggests to me that further violation of the Code of Professional Responsibility is more probable than in a case where the breach is acknowledged. On that basis, I reconcile this more severe sanction with the lesser penalty applied to respondent Brooks for his part in handling funds owed to Mr. Thomas. I, therefore, would impose the sanction recommended by the board.

MOYER, J., concurs in the foregoing dissenting opinion.

―――――――――――