[This opinion has been published in *Ohio Official Reports* at 75 Ohio St.3d 524.]

COLUMBUS BAR ASSOCIATION *v*. BROOKS.

[Cite as *Columbus Bar Assn. v. Brooks*, 1996-Ohio-457.]

*Attorneys at law—Misconduct—One-year suspension with last six months stayed on condition—Failing to promptly pay funds client is entitled to receive.*

(No. 95-1218—Submitted November 8, 1995—Decided June 5, 1996.)

ON CERTIFIED REPORT by the Board of Commissioners on Grievances and Discipline of the Supreme Court, No. 94-87.

_____

{¶ 1} Relator, Columbus Bar Association, charged respondent, Walter G. Brooks of Columbus, Ohio, Attorney Registration No. 0034246, with having violated DR 9-102(B)(4) (failing to promptly pay funds client is entitled to receive). A panel of the Board of Commissioners on Grievances and Discipline of the Supreme Court ("board") heard the matter on April 6, 1995.

{¶ 2} The testimony and stipulations submitted to the panel demonstrated that respondent and Lawrence E. Winkfield[1] practiced law as a professional association, *Winkfield & Brooks Co., L.P.A.* ("L.P.A."), of which they were the sole owners. In January 1989, respondent entered into a fee agreement with Elbert Thomas to represent him in an employment discrimination suit. The fee agreement signed by respondent and Thomas required the payment of a retainer and an hourly fee for respondent's services. The agreement also provided that if the claim was settled, respondent would retain one third of the settlement amount and would reimburse Thomas any monies previously paid under the agreement.

_____

1. Winkfield was also charged with violating DR 9-102(B)(4). See *Columbus Bar Assn. v. Winkfield* (1996), 75 Ohio St.3d 527, 664 N.E.2d 902.

**{¶ 3}** In October 1990, after advancing at least $13,956 in attorney fees to the L.P.A., Thomas agreed to a $48,298 settlement of his claim. When Thomas went to pick up his settlement check, he noticed that his share of the settlement proceeds did not include a reimbursement of the previously advanced fees.

**{¶ 4}** Thomas complained immediately to a secretary at the L.P.A. Subsequently, he met with respondent on several occasions to discuss the $13,956 deficiency. In February 1991, respondent acknowledged in a letter that Thomas was entitled to the reimbursement of $13,956. Respondent paid Thomas $3,000 with checks from the L.P.A. and, apparently, promised to make installment payments of $500 per month until Thomas had been reimbursed in full.

**{¶ 5}** Respondent sporadically paid Thomas the installments with L.P.A. checks until March 1993, when the association dissolved, repaying only $6,050 of the $13,956 shortfall. In October 1993, respondent personally agreed with Thomas to pay him installments of $200 per month on the remaining debt. By May 1994, however, respondent had made only two payments from his own funds, prompting Thomas to file a grievance with relator.

**{¶ 6}** Prior to filing the grievance, Thomas contacted Winkfield regarding the outstanding debt for the attorney fees advanced in 1990. Winkfield, however, did not reimburse any money to Thomas.

**{¶ 7}** In September 1994, Thomas filed a claim with the Clients' Security Fund for payment of the monies retained by respondent on behalf of the L.P.A. His claim incited respondent to pay him $3,000 in November 1994, $200 in December 1994, $200 in February 1995, and $200 in March 1995. At the time of the hearing, respondent had paid Thomas a total of $10,050 of the $13,956 debt, leaving a balance of $3,906 in unreimbursed attorney fees.

**{¶ 8}** Testifying before the panel, respondent acknowledged the obligation on the debt. He explained that there had been no funds available to reimburse Thomas in February 1991, when respondent realized the miscalculation of

Thomas's share of the settlement proceeds. Respondent further testified that he had informed Winkfield of the debt owed Thomas in early 1991. Winkfield denied this assertion, insisting that he learned of Thomas's claim for reimbursement only after the dissolution of the L.P.A.

**{¶ 9}** The panel found that respondent had violated DR 9-102(B)(4). In recommending an appropriate sanction, the panel noted that respondent had not submitted mitigating evidence. The panel recommended that respondent be suspended from the practice of law for one year with the entire suspension stayed on the condition that respondent and Winkfield reimburse Thomas "approximately $3,000" by July 1, 1995.

**{¶ 10}** The board adopted the findings of fact and conclusions of law of the panel, and, except for the deadlines imposed, agreed with the panel's recommendation. The board further recommended that the costs of the proceedings be taxed to respondent.

———————————

*Carlile, Patchen & Murphy* and *Robert B. Barnett, Jr.*; and *Bruce A. Campbell*, Columbus Bar Association Counsel, for relator.

*Walter G. Brooks, pro se.*

———————————

**MOYER, C.J.**

**{¶ 11}** This case demonstrates the importance of DR 9-102 and the necessity of preserving the identity of funds and property of a client. The rule against commingling a client's funds with those of his or her attorney was established to protect against the danger inherent in all cases that such commingling will result in the loss of client money and the erosion of public trust in the legal profession.

**{¶ 12}** Thomas paid respondent and Winkfield a retainer fee of $13,956. Thomas's claim was settled for $48,298. Respondent and Winkfield were entitled

to receive $2,143.33 from the settlement proceeds, providing them with a total fee of $16,099.33. Instead, they kept $15,516 from the settlement proceeds and disbursed $32,782 to Thomas, who should have received $46,154.67. On January 5, 1996, over five years from the date of the settlement, Thomas received a check from Winkfield that may or may not be a final payment.[2]

{¶ 13} Respondent asserts that after realizing his inadvertent "mistake" in calculating Thomas's settlement check, he made "a diligent and concerted effort to fully reimburse" his client. We find this assertion to be, at best, disingenuous. The actions of respondent regarding the repayment of his client's money seem more a diligent and concerted effort to evade his responsibility as an attorney than to settle a debt owed to a client.

{¶ 14} Initially, Thomas pursued the issue of overpayment for several months before respondent finally acknowledged the debt to him in February 1991. Over the next five years, respondent continually stalled and evaded his obligation to fully reimburse Thomas the funds he was entitled to receive. The result was that Thomas was denied, and the respondent enjoyed, the use of a significant amount of money that belonged to Mr. Thomas during that lengthy period.

{¶ 15} Given the length of time involved in the improper retention of the client's funds by respondent, we agree with relator that it would be difficult to imagine a more glaring violation of this provision of the Code of Professional Responsibility. Because the misconduct of the respondent is of such a serious nature, an actual suspension from the practice of law is warranted. Therefore, respondent is suspended from the practice of law in Ohio for one year with the last six months stayed upon condition that prior to the stay he provide full restitution

---

2. In his supplemental pleading regarding the payment of full restitution, Winkfield assures us that he has already completely repaid Thomas. Relator does not dispute this representation; however, Thomas was owed $3,906 as of the date of the panel hearing, and, since then, Winkfield has offered proof only for his payment of $906 to Thomas. Respondent, however, has offered no proof of any recent attempts to satisfy the obligation.

plus interest at the judgment rate to Thomas.  Any lighter sanction would be a message to the bar that a lawyer may wrongfully withhold a significant amount of funds owing to a client for an indeterminate amount of time and receive little more than an order from this court that the funds must be repaid with interest.

*Judgment accordingly.*

DOUGLAS, SHAW, RESNICK, F.E. SWEENEY, PFEIFER and COOK, JJ., concur.

STEPHEN R. SHAW, J., of the Third Appellate District, sitting for WRIGHT, J.

————————————