[This opinion has been published in *Ohio Official Reports* at 76 Ohio St.3d 471.]

CUYAHOGA COUNTY BAR ASSOCIATION *v*. KEELER.

[Cite as *Cuyahoga Cty. Bar Assn. v. Keeler*, 1996-Ohio-377.]

*Attorneys at law—Misconduct—Indefinite suspension—Neglect of an entrusted legal matter—Failure to promptly return client funds or property—Violation of a Disciplinary Rule—Conduct adversely reflecting on fitness to practice law—Failure to cooperate in disciplinary investigation—Conduct involving dishonesty, fraud, deceit, or misrepresentation—Failure to carry out contract of employment—Accepting employment not competent to handle—Failure to maintain records of client funds—Handling a legal matter without adequate preparation—Practicing law in violation of professional regulations.*

(No. 96-922—Submitted June 25, 1996—Decided August 28, 1996.)

ON CERTIFIED REPORT by the Board of Commissioners on Grievances and Discipline of the Supreme Court, No. 95-15.

———————————

{¶ 1} In an amended complaint filed on September 27, 1995, relator, Cuyahoga County Bar Association, charged respondent, Robert C. Keeler, of Westlake, Ohio, Attorney Registration No. 0029017, with multiple disciplinary violations. In his answer, respondent admitted some facts alleged in the complaint, denied others, and added explanations.

{¶ 2} On February 28, 1996, a panel of the Board of Commissioners on Grievances and Discipline of the Supreme Court ("board") held a hearing on the matter. The complaint, answer, and stipulations established the following misconduct and violations by respondent.

Claim I—Icke

{¶ 3} Robert H. Icke, on behalf of his company, BGI Enterprises Inc. retained respondent in connection with a sales tax assessment. After the Board of Tax Appeals upheld the assessment, respondent appealed to the court of appeals. However, respondent filed the appeal late, thus violating DR 6-101(A)(3) (neglect of an entrusted legal matter). Respondent also retained funds belonging to BGI and Icke. After receiving a demand for repayment, respondent issued a check that was returned for insufficient funds, thereby violating DR 9-102(B)(4) (failure to promptly return client funds or property). Respondent was unable to produce all funds demanded of him to satisfy the unpaid sales taxes, and thereby violated DR 1-102(A)(1) (violation of Disciplinary Rule) and 1-102(A)(6) (conduct adversely reflecting fitness to practice law). Respondent never returned Icke's will and other records, and thereby violated DR 9-102(B)(4). Finally, respondent did not turn over his file and records of this matter to bar investigators upon request, and thereby violated Gov. Bar. R. V(4)(G) (failure to cooperate with investigation).

Claim II—Vesely

{¶ 4} Respondent was retained by Robert Vesely to have a buried TV cable moved from Vesely's property. Respondent advised Vesely that he had filed a lawsuit against the cable company and was waiting for a trial date. In fact, respondent never filed such a suit. Respondent also repeatedly failed to return Vesely's phone calls. Whenever he did return the calls, he was not honest with Vesely about the status of the lawsuit. Respondent admitted that these acts violated DR 1-102(A)(4) (conduct involving dishonesty, fraud, deceit, or misrepresentation), 1-102(A)(6), 6-101(A)(3), and 7-101(A)(2)(failure to carry out contract of employment). Further, respondent did not turn over his file and records of this matter to the bar investigator upon request, and thereby violated Gov. Bar R. V(4)(G).

Claim III—Lovejoy and McConnell

{¶ 5} Respondent was retained by Louise McConnell to handle the estate of Lorraine Lovejoy. However, respondent never opened an estate for Lovejoy in the probate court although he told McConnell that he had done so. Respondent failed to timely file an Ohio estate tax return for the Lovejoy estate, which caused the estate to pay interest and penalties. Respondent also received $5,600 from McConnell which he asked her to advance on behalf of the Lovejoy estate to pay estate debts, taxes, and attorney fees he earned while handling the estate. In fact, respondent provided no services for the estate. When a demand for return of the $5,600 was made to him, respondent issued a check, although he knew the check was not backed by sufficient funds. Respondent further admitted that as of the hearing date, he had not repaid the $5,600.

{¶ 6} A probate court found that respondent had concealed assets of the estate of $5,600 and ordered him to pay the estate $5,600, a penalty of ten percent ($560), and costs by March 29, 1993. Although respondent's objections and appeal of the order were rejected, respondent had still not, as of February 28, 1996, repaid the estate.

{¶ 7} Respondent's actions with respect to McConnell and the Lovejoy estate violated DR 1-102(A)(4), 6-101(A)(1) (accepting employment when not competent to handle), 6-101(A)(3), 9-102(B)(4) and 7-101(A)(2). Finally, respondent did not turn over his file and records of this matter to the bar investigator upon request and thereby violated Gov. Bar R. V(4)(G).

Claim IV—Adam

{¶ 8} Respondent was retained to represent Joseph Adam in a paternity and child support matter. Respondent accepted fees but thereafter failed to perfect an appeal by arranging for the entry of a final appealable order. By not doing so, respondent violated DR 6-101(A)(3) and 7-101(A)(2). Respondent then failed to return Adam's funds or other properties in violation of DR 9-102(B)(4).

Respondent failed to turn over his file and records of this matter to a bar investigator upon request and thereby violated Gov. Bar R. V(4)(G).

### Claim V—Wolf

**{¶ 9}** Respondent was retained by John A. Wolf to probate the estates of Wolf's parents. Respondent admits that proceeds from the sale of real estate were forwarded to him, but that he was unable to account for the proceeds, in violation of DR 1-102(A)(4), 1-102 (A)(6), 6-101(A)(3), 7-101(A)(2), 9-102(B)(3) (failure to maintain records of client funds), and 9-102(B)(4). Further, respondent failed to properly attend to the transfer and payment of taxes to protect the Wolf's Pennsylvania real estate, and thereby violated DR 1-102(A)(4), 1-102(A)(6), 6-101(A)(3), 7-101(A)(2), 9-102(B)(3) and 9-102(B)(4). Further, respondent did not turn over his file and records of this matter to the bar investigator upon request, and thereby violated Gov. Bar. R. V(4)(G).

### Claim VI—Cole

**{¶ 10}** Respondent was retained to incorporate Dale Cole Enterprises, Inc. but failed to keep its corporate records current, resulting in cancellation of the certificate of incoporation. By his actions, respondent violated DR 6-101(A)(1), 6-101(A)(2)(handling a legal matter without adequate preparation), 6-101(A)(3), 7-101(A)(2), and 1-102(A)(4). Respondent failed to file and record leases negotiated for the oil rights on certain property, resulting in the loss of his client's rights thereto, and thereby violating DR 6-101(A)(1), 6-101(A)(2), 6-101(A)(3), 1-102(A)(4), and 7-101(A)(2). Respondent failed to maintain his client's documents and thereby violated DR 9-102(B)(3). Respondent failed to file certain tax documentation and thereby violated DR 6-101(A)(1), 6-101(A)(2), 6-101(A)(3), 1-102(A)(4), 7-101(A)(2), and 9-102(B)(3). Respondent failed to file for a windfall profit tax refund, although he had assured Cole he had done so; this failure violated DR 6-101(A)(1), 6-101(A)(2), 6-101(A)(3), 7-101(A)(2), and 1-102(A)(4). Contrary to his assurances to Cole that he had done so, respondent also failed to file

a lawsuit based upon a promissory note, and thereby violated DR 6-101(A)(1), 6-101(A)(2), 6-101(A)(3), 9-102(B)(3), and 1-102(A)(4). Further, respondent issued at least three checks to Cole that were returned for insufficient funds and thereby violated DR 1-102(A)(4). Finally, respondent did not turn over his file and records on these matters to the bar investigator upon request, and thereby violated Gov. Bar R. V(4)(G).

### Claim VII—Attorney Registration

**{¶ 11}** Respondent's registration with the Supreme Court as an attorney lapsed on September 1, 1991, but respondent continued to practice law and thereby violated DR 3-101(B) (practicing in violation of professional regulations). Respondent did not turn over records of this matter upon request and thereby violated Gov. Bar R. V(4)(G).

**{¶ 12}** In mitigation, respondent testified that he recognized that he was an alcoholic and contacted the Ohio Lawyers Assistance Program in the fall of 1992. He was then admitted to a thirty-day hospital inpatient treatment program and later resided at a halfway house. He testified that he has abstained completely from alcohol since July 1994, and regularly attends Alcoholic Anonymous meetings.

**{¶ 13}** Respondent practiced law from 1973 until late 1994 and took part in various community activities. Prior to entering the practice of law, respondent served in the United States Marine Corps from 1961 through 1967 and was discharged as a captain. He then served in the reserves, retiring from the Marine Corps Reserves as a lieutenant colonel in 1987.

**{¶ 14}** Respondent has not practiced law since late 1994 and now works as a hotel maintenance man and van driver. He lives in a rooming house, earns approximately $6 an hour, and attends graduate school part time. He reports that as a result of his alcoholism, he now owes a quarter of a million dollars, but he does not plan to declare bankruptcy. He claims he would like to return to the practice of law some day.

**{¶ 15}** The panel found that respondent "presented a picture of a very pathetic individual whose drinking caused him to lose his family and his practice. **** He neglected his professional responsibilities[,]*** himself, *** his family, [and] *** his clients. However, he readily admits his culpability and the injury he caused *** [and] has embarked on a positive program to regain his status as a productive citizen."

**{¶ 16}** Relator recommended an indefinite suspension, and respondent asked that he be given another opportunity to practice law in the future. The panel recommended an indefinite suspension. The board adopted the panel's findings of fact, conclusions of law, and recommendation.

_____

*Laurence A. Turbow*, *Martha H. Krebs* and *Michael M. Courtney*, for relator.

*J. Michael Drain*, for respondent.

_____

*Per Curiam.*

**{¶ 17}** Having reviewed the record, we concur in the board's findings, conclusions and recommendation. Respondent's repeated and serious disciplinary violations require, at a bare minimum, an indefinite suspension from the practice of law in Ohio. In fact, his conduct could ordinarily be expected to result in disbarment. See, *e.g.*, *Disciplinary Counsel v. Sprague* (1996), 74 Ohio St.3d 624, 660 N.E.2d 1168; *Disciplinary Counsel v. Rubright* (1994), 69 Ohio St.3d 34, 630 N.E.2d 335.

**{¶ 18}** However, we have given appropriate mitigating weight to respondent's sincere efforts to overcome his alcoholism. See *Cincinnati Bar Assn. v. Slattery* (1996), 74 Ohio St.3d 209, 658 N.E.2d 254; *Disciplinary Counsel v. McElrath* (1994), 71 Ohio St.3d 131, 642 N.E.2d 370. Accordingly, we hereby

indefinitely suspend respondent from the practice of law in Ohio.  Costs taxed to respondent.

*Judgment accordingly.*

MOYER, C.J., DOUGLAS, RESNICK, F.E. SWEENEY, PFEIFER, COOK and STRATTON, JJ., concur.

—————————