[This opinion has been published in *Ohio Official Reports* at 78 Ohio St.3d 75.]

MIAMI COUNTY BAR ASSOCIATION *v*. HALLOWS.

[Cite as *Miami Cty. Bar Assn. v. Hallows*, 1997-Ohio-237.]

*Attorneys at law—Misconduct—Indefinite suspension—Failing to preserve identity of funds and property of client—Failing to promptly pay or deliver client's funds or properties—Neglecting an entrusted legal matter— Engaging in conduct involving moral turpitude—Engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation—Conduct prejudicial to the administration of justice.*

(No. 96-2429—Submitted December 11, 1996—Decided March 26, 1997.)

ON CERTIFIED REPORT by the Board of Commissioners on Grievances and Discipline of the Supreme Court, No. 95-79.

_____

{¶ 1} In a complaint filed on October 10, 1995, relator, Miami County Bar Association, charged respondent, L. Craig Hallows of Piqua, Ohio, Attorney Registration No. 0031350, with violations of DR 9-102(B)(3) (preserving identity of funds and property of a client), 9-102(B)(4) (promptly paying or delivering to a client the funds or properties in the possession of the lawyer), 6-101(A)(3) (neglecting an entrusted legal matter), and 1-102(A)(3), (4), and (5) (engaging in conduct involving moral turpitude, dishonesty, fraud, deceit, or misrepresentation, or conduct prejudicial to the administration of justice). On the day of the hearing before a panel of the Board of Commissioners on Grievances and Discipline of the Supreme Court ("board"), respondent withdrew a previously filed answer and admitted all the allegations of the complaint.

{¶ 2} Based on the admissions of respondent and the testimony at the hearing, the panel found that in the fall of 1993 respondent settled a lawsuit for his client, Grace Oliver, for $55,000. He paid himself an attorney fee from the

settlement, but did not remit the balance to Oliver despite her repeated requests. Oliver employed another attorney whose efforts to obtain the funds were also unsuccessful. Only after respondent was subpoenaed in connection with this disciplinary proceeding did he transmit to Oliver her portion of the settlement proceeds.

{¶ 3} The panel further found that while guardian of his son, Christian Hallows, respondent took approximately $58,000 from Hallows's guardianship account, and while guardian of an incompetent veteran, Maurice Christian, respondent took approximately $44,000 from Christian's guardianship account. Respondent has made no restitution to either the Hallows guardianship or the Christian guardianship.

{¶ 4} The panel additionally found that respondent began to have a drinking problem in the mid- to late 1970s and that he was dysfunctional for a period of eighteen months before he was hospitalized in April 1995 for alcohol dependency. Respondent has since signed and met the conditions of a contract with the Ohio Lawyers Assistance Program.

{¶ 5} After the hearing, the panel learned that respondent had been convicted of (aggravated) theft and tampering with records.

{¶ 6} The panel recommended that respondent be suspended indefinitely from the practice of law and that any readmission be predicated on the repayment of funds to the Hallows and Christian guardianships and the repayment of any surety that was required to honor its bond as a result of respondent's defalcations. The board adopted the findings, conclusions, and recommendations of the panel.

_____

*Roger Luring*, for relator

*De Wayne Smith*, for respondent

_____

***Per Curiam.***

**{¶ 7}** Public trust in the legal profession is tested daily in the service provided by each individual lawyer to his or her clients. When a lawyer, who has taken responsibility for a client's papers or property, commingles client funds or dissipates that property, that lawyer not only ill serves the client but also contributes to the erosion of public trust in the profession. *Columbus Bar Assn. v. Brooks* (1996), 75 Ohio St.3d 524, 664 N.E.2d 900.

**{¶ 8}** This disciplinary proceeding involves a respondent whose clients expected him to promptly remit settlement funds and to handle estate funds with the utmost care. Respondent not only failed to remit client funds promptly when requested but also filed false reports with the probate court and misappropriated moneys in two guardianship estates.

**{¶ 9}** Respondent has received criminal penalties for his fraud and defalcation. It is our duty not to punish further for these infractions but, as required by our power of superintendence of the practice and profession of law in this state, to determine whether and on what conditions respondent should remain on the roll of those attorneys permitted to practice in Ohio.

**{¶ 10}** During the past year we have said at least three times that the appropriate sanction for misappropriation of client funds is disbarment. *Columbus Bar Assn. v. Sterner* (1996), 77 Ohio St. 3d 164, 16, 672 N.E.2d 633; *Mahoning Cty. Bar Assn. v. Michaels* (1996), 75 Ohio St.3d 645, 647, 665 N.E.2d 676, 677; *Disciplinary Counsel v. Connaughton* (1996), 75 Ohio St. 3d 644, 645, 665 N.E.2d 675, 676. This is not a new sanction. We have imposed this penalty for at least twenty-two years. Cf. *Lake Cty. Bar Assn. v. Ostrander* (1975), 41 Ohio St.2d 93, 70 O.O.2d 173, 322 N.E.2d 653.

**{¶ 11}** In this case the board found mitigating circumstances and recommended a penalty of indefinite suspension. In a recent similar case which could otherwise have warranted disbarment, we gave weight to the attorney's

sincere attempt to overcome his alcoholism and the board's recommendation of leniency. *Cuyahoga Cty. Bar Assn. v. Keeler* (1996), 76 Ohio St.3d 471, 475, 668 N.E.2d 471, 474. For a similar reason, we adopt the recommendation of the board and the respondent is hereby indefinitely suspended from the practice of law in Ohio. Costs are taxed to the respondent.

*Judgment accordingly*.

DOUGLAS, RESNICK, F.E. SWEENEY and LUNDBERG STRATTON, JJ., concur.

COOK, J., dissents.

MOYER, C.J., and PFEIFER, J., not participating.

————————————

**COOK, J., dissenting.**

{¶ 12} The thefts by this respondent involve a level of volition that, in my view, is unmitigated by his addiction to alcohol. I would, therefore, disbar respondent.

————————————