[This opinion has been published in *Ohio Official Reports* at 81 Ohio St.3d 76.]

CLEVELAND BAR ASSOCIATION *v.* KNOWLTON.

[Cite as *Cleveland Bar Assn. v. Knowlton*, 1998-Ohio-583.]

*Attorneys at law—Misconduct—Indefinite suspension—Misappropriation of client funds—When an attorney engages in conduct involving dishonesty, fraud, deceit, or misrepresentation, the attorney will be actually suspended from the practice of law for an appropriate period of time.*

(No. 97-1284—Submitted December 3, 1997—Decided February 18, 1998.)

ON CERTIFIED REPORT by the Board of Commissioners on Grievances and Discipline of the Supreme Court, No. 96-10.

———————————

{¶ 1} On February 5, 1996, relator, Cleveland Bar Association, charged respondent, Leslie Knowlton of Shaker Heights, Ohio, Attorney Registration No. 0032315, with violating DR 1-102(A)(4) (engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation), (5) (engaging in conduct prejudicial to the administration of justice), (6) (engaging in conduct that adversely reflects upon the fitness to practice law), 6-101(A)(3) (neglecting an entrusted legal matter), 7-101(A)(2) (failing to carry out a contract of employment for professional services), and 7-101(A)(3) (intentionally damaging a client during the course of the professional relationship). After respondent filed his answer, the matter was heard by a panel of the Board of Commissioners on Grievances and Discipline of the Supreme Court ("board").

{¶ 2} On the basis of stipulated facts, exhibits, and testimony, the panel found that from 1979 to 1993, while acting as trustee of the Margaret L. Weir Trust ("Weir Trust"), respondent failed to deposit dividend checks totaling $91,115 from the trust's mutual funds into its savings and checking accounts. Respondent

reported the income in the estate's tax returns, but the checks remained undeposited in his office.

{¶ 3} The panel further found that in 1980, while representing the estate of Charles P. Durra, respondent failed to deposit three checks totaling $12,455.82 into the trust created for Durra's children ("Durra Trust") and eventually payable to Amy and Jeffrey Durra. In 1987, respondent deposited trust funds of $24,942.86 due to Jeffrey Durra in respondent's own personal account.

{¶ 4} In 1995, respondent's law firm settled with the Weir Trust for $131,721, the present value of the undeposited funds, plus $45,760 in attorney fees. The law firm settled with Amy and Jeffrey Durra for $129,500, plus $5,031.10 in attorney fees. Respondent reimbursed the law firm for these amounts from his retirement fund.

{¶ 5} The panel concluded that respondent's actions with respect to the Weir Trust violated DR 6-101(A)(3), and that his actions with respect to the Durra Trust and its beneficiaries violated DR 1-102(A)(4), (5), and (6), 6-101(A)(3), and 7-101(A)(2) and (3).

{¶ 6} In addition to mitigation testimony from respondent, the panel received testimony from five attorneys as character witnesses, letters from twenty other attorneys, and a letter from respondent's minister. Respondent testified about the stress created in his professional life when, in the 1980s, his law firm began to place increased emphasis on billable hours. Because much of the work in respondent's specialty could not be billed to specific clients, he was required to work additional hours in order to maintain his position in the firm. In addition, changing tax laws in the 1980s required respondent to work even more non-billable hours to maintain his expertise in estate planning. Respondent also testified as to various elements of stress in his personal life. As a result of this stress, he stayed awake at night, slept poorly, and fell asleep during the day, even at meetings.

{¶ 7} In 1993, respondent met with a physician who diagnosed him as having sleep apnea, a disease which causes sleepiness and impairs judgment and ability to concentrate. After the diagnosis, respondent began to use a Continuous Positive Airway Pressure machine when sleeping at night and then was able to function normally during the day.

{¶ 8} The testimony and letters from attorneys uniformly referred to the high regard in which respondent was held in estate planning.  Two of the attorneys who testified and two of the attorneys who wrote on behalf of respondent confirmed the billing pressures on lawyers specializing in trusts and estates in large law firms and the difficulty of maintaining such a practice at a professional level in the contemporary competitive legal community.  In addition, the panel received testimony about respondent's sleep apnea from Dr. Sherrod D. Morehead, his psychologist, from respondent's wife, and from an attorney in his law firm. Documentation was also received by the panel from various physicians who had examined and treated respondent for this disorder.  Two of the character-witness attorneys who testified and two of the attorneys who wrote on behalf of respondent also observed his sleep disorder.

{¶ 9} The panel recommended that respondent be suspended for two years. The board adopted the panel's findings and conclusions, but recommended that, in the light of  respondent's restitution and his outstanding reputation as a lawyer, he be suspended for one year.

---

*Harvey Snider* and *Lynn A. McLaughlin*, for relator.
*William T. Doyle*, for respondent.

---

**Per Curiam.**

{¶ 10} We adopt the findings and conclusions of the board.  In *Disciplinary Counsel v. Fowerbaugh* (1995), 74 Ohio St.3d 187, 190, 658 N.E.2d 237, 240, we

said that "[w]hen an attorney engages in a course of conduct resulting in a finding that the attorney has violated DR 1-102(A)(4), the attorney will be actually suspended from the practice of law for an appropriate period of time." The question before us, then, is an appropriate period of suspension.

**{¶ 11}** Respondent misappropriated client funds. In *Miami Cty. Bar Assn. v. Hallows* (1997), 78 Ohio St.3d 75, 77, 676 N.E.2d 517, 518-519, we said that, absent mitigating circumstances, the appropriate sanction for such misappropriation is disbarment and pointed out that we have so held for at least twenty-two years. In *Hallows*, as in the earlier case of *Cuyahoga Cty. Bar Assn. v. Keeler* (1996), 76 Ohio St.3d 471, 475, 668 N.E.2d 471, 474, we gave weight to an attorney's sincere attempt to overcome the disability which may have caused his problems. In both of those cases we imposed the sanction of indefinite suspension. We impose the same sanction in this case. Respondent is hereby indefinitely suspended from the practice of law in Ohio. Costs taxed to respondent.

*Judgment accordingly*.

MOYER, C.J., DOUGLAS, RESNICK, F.E. SWEENEY, PFEIFER, COOK and LUNDBERG STRATTON, JJ., concur.

———————————————