**[This opinion has been published in *Ohio Official Reports* at 87 Ohio St.3d 344.]**

COLUMBUS BAR ASSOCIATION *v*. BROOKS.

**[Cite as *Columbus Bar Assn. v. Brooks*, 1999-Ohio-137.]**

*Attorneys at law—Misconduct—Two-year suspension with eighteen months stayed on condition—Collecting a clearly excessive fee—Neglecting an entrusted legal matter—Failing to seek lawful objectives of client—Failing to carry out contract of employment—Prejudicing or damaging client during course of professional relationship.*

(No. 99-919—Submitted August 25, 1999—Decided December 22, 1999.)

ON CERTIFIED REPORT by the Board of Commissioners on Grievances and Discipline of the Supreme Court, No. 97-85.

_____

{¶ 1} In March 1993, Raymond Jackson, Jr. and his parents retained respondent, Walter Gene Brooks of Columbus, Ohio, Attorney Registration No. 0034246, to bring an action with respect to Jackson's claim against law enforcement officials in Findlay, Ohio, for police misconduct. Respondent's written agreement with Jackson and his parents provided that they were to pay legal fees at the rate of $125 per hour if the case was litigated, and a contingent fee if the case was settled. The fee agreement, which did not designate an hourly rate for paraprofessionals, also required that Jackson and his parents were "[t]o pay all necessary filing fee, court costs and other out of pocket expenses incurred in said litigation." The settlement portion of the fee agreement stated, "In the event of settlement * * * I hereby agree that [respondent] shall receive thirty-three percent (33%) of said dollar settlement minus the attorney fees *only* paid to [respondent] prior to a settlement, provided that the thirty-three percent (33%) dollar figure is greater than the paid attorney fees." (Emphasis *sic*.)

**{¶ 2}** Respondent testified that later Jackson and his parents orally agreed to be charged for the work of respondent's paralegal, but Mrs. Jackson did not recall such a conversation.

**{¶ 3}** The Jackson case was settled for $30,000. Respondent's final statement to the Jacksons, required by R.C. 4705.15(C), indicated that he took as his fee $9,900 less the amounts the Jacksons had already paid to him. In addition, the statement included an "Amount Owed on Expenses" of $2,981.90, separately stated from the filing fee, transcript, and deposition costs. The $2,981.30 consisted for the most part of hourly fees for respondent's secretary and law clerk.

**{¶ 4}** Also in March 1993, Fatica Ayers retained respondent to represent her in a medical malpractice matter. Respondent filed suit, but after the defendant filed a motion for summary judgment supported by an affidavit of a medical expert, respondent filed Ayers's memorandum in opposition seven weeks out of rule and without the necessary affidavit of a medical expert. The court granted the defendant's summary judgment motion. On respondent's advice Ayers appealed. When the court of appeals affirmed the trial court, Ayers on respondent's advice appealed to the Supreme Court. Respondent, however, failed to file a timely notice of appeal and memorandum in support of jurisdiction in the Supreme Court.

**{¶ 5}** On October 13, 1997 relator, Columbus Bar Association, filed a complaint charging that respondent's conduct violated several Disciplinary Rules. Respondent answered, and the matter was heard by a panel of the Board of Commissioners on Grievances and Discipline of the Supreme Court ("board").

**{¶ 6}** The panel found the facts as stated and with respect to the Jackson matter concluded that respondent had violated DR 2-106(A) (collecting a clearly excessive fee). With respect to the Ayers matter, the panel found the facts as stated and concluded that respondent had violated DR 6-101(A)(2) (handling a matter without adequate preparation), 6-101(A)(3) (neglecting an entrusted legal matter), 7-101(A)(1) (failing to seek the lawful objectives of a client), 7-101(A)(2) (failing

to carry out a contract of employment), and 7-101(A)(3) (prejudicing or damaging a client during the course of a professional relationship).

{¶ 7} The panel recommended that respondent be suspended from the practice of law for two years with eighteen months stayed on the condition that respondent provide restitution to the Jacksons in the amount of $2,982 and to Ayers in the amount of $2,500. The board adopted the findings, conclusions, and recommendation of the panel.

———————————

*Bruce A. Campbell, Kristy J. Swope* and *Stanley D. Ross,* for relator, Columbus Bar Association.

*Walter G. Brooks, pro se*.

———————————

*Per Curiam.*

{¶ 8} We adopt the findings of the board in the Jackson matter. In cases where a contract for legal services in a tort matter includes a contingent fee, R.C. 4705.15(B) requires that "[the] agreement shall be reduced to writing." *Columbus Bar Assn. v. Klos* (1998), 81 Ohio St.3d 486, 490, 692 N.E.2d 565, 568. In addition to outlining the percentage that the attorney will charge for fees, the agreement should provide that the client is liable for the costs of litigation. Cf. *Disciplinary Counsel v. Shane* (1998), 81 Ohio St.3d 494, 497, 692 N.E.2d 571, 573-574. Examples of such costs appear in DR 5-103(B) and include "court costs, expenses of investigation, expenses of medical examination, and costs of obtaining and presenting evidence." Costs of litigation generally do not include secretarial charges or fees of paraprofessionals. Those costs are considered to be normal overhead subsumed in the percentage fee.

{¶ 9} In cases where legal services are contracted for at an hourly rate, an attorney's secretarial costs, except in unusual circumstances and then only when clearly agreed to, are part of overhead and should be reflected in the hourly rate. If

an attorney charges separately for a legal assistant, the legal assistant's hourly charges should be stated and agreed to in writing.

{¶ 10} Where, as here, the contingent fee portion of the agreement was activated, the settlement sheet should have reflected that all legal fees and normal overhead expenses were included in respondent's thirty-three percent charge. While the Jacksons and respondent dispute about whether an oral modification of the written contract was to include paralegal fees, no evidence at all exists that the secretarial charges were part of the contract. We conclude that by collecting for secretarial and law clerk expenses, in addition to filing fees, deposition fees, and his thirty-three percent of the settlement, respondent did not adhere to his written contract with the Jacksons and thereby charged a clearly excessive fee in violation of DR 2-106(A).

{¶ 11} We also adopt the findings of the board in the Ayers matter. During the course of her case Ayers paid respondent $4,760.39. Respondent returned $550 to Ayers after he failed to perfect an appeal to the Supreme Court. Based on these facts we adopt the conclusions of the board. Even disregarding whether the appeals of Ayers's case were improvidently taken, respondent's failure to obtain the proper affidavit to support his memorandum in the common pleas court and his failure to file timely pleadings in both that court and the Supreme Court constitute violations of DR 6-101(A)(2), 7-101(A)(1), 7-101(A)(2), and 7-101(A)(3).

{¶ 12} We note that we previously suspended respondent for one year with six months stayed and restitution ordered in *Columbus Bar Assn. v. Brooks* (1996), 75 Ohio St.3d 524, 664 N.E.2d 900.

{¶ 13} In this matter we hereby suspend respondent from the practice of law for two years with eighteen months stayed on condition that during the first six months of his suspension respondent reimburse the Jacksons in the amount of $2,981.90 and reimburse Ayers in the amount of $2,500. Costs are taxed to respondent.

*Judgment accordingly.*

MOYER, C.J., DOUGLAS, RESNICK, F.E. SWEENEY, PFEIFER and LUNDBERG STRATTON, JJ., concur.

COOK, J., dissents.

_____

**COOK, J., dissenting.**

**{¶ 14}** I agree with the majority that suspension is the appropriate sanction in this case, but due to the presence of several aggravating factors I respectfully dissent from the majority's decision to stay three-fourths of Brooks's suspension.

**{¶ 15}** The majority's decision to suspend respondent finds support in the ABA Standards for Imposing Lawyer Sanctions ("ABA Standards").[1] When respondent collected a clearly excessive fee from his client in violation of DR 2-106(A)(1), he knowingly violated the duty that he owed to the legal profession and caused substantial injury to that client with an overcharge of nearly $3,000. The ABA Standards suggest that "[s]uspension is generally appropriate when a lawyer knowingly engages in conduct that is a violation of a duty owed as a professional and causes injury or potential injury to a client, the public, or the legal system." Standard 7.2 (1992 Amend.).

**{¶ 16}** Respondent also repeatedly neglected an entrusted legal matter during the medical malpractice case when he filed an untimely and incomplete memorandum in opposition, an untimely notice of appeal, and an untimely jurisdictional memorandum. With these gross violations of DR 6-101(A)(3), respondent knowingly violated the duty of diligence owed to his client. The ABA Standards provide that "[s]uspension is generally appropriate when: (a) a lawyer knowingly fails to perform services for a client and causes injury or potential injury

_____

1. See ABA Center for Professional Responsibility, Standards for Imposing Lawyer Sanctions (1991 & Amend.1992).

to a client; or (b) a lawyer engages in a pattern of neglect and causes injury or potential injury to a client." Standard 4.42.

{¶ 17} The majority chooses to adopt the board recommendation to reduce the actual suspension with an eighteen-month stay. But the panel and board reports cite no mitigating factors, and I find none in the record. Instead, the panel and board reports set forth several of the aggravating factors listed in the recently proposed Guidelines for Imposing Lawyer Sanctions.[2] This attorney's dishonest or selfish motive, pattern of misconduct, multiple offenses, and failure to make restitution should all be considered in favor of imposing a *more severe sanction*.

{¶ 18} Because I believe that the presence of these aggravating factors prompts a longer *actual* suspension in this case, I respectfully dissent.

————————————

---

2. See Board of Commissioners on Grievances and Discipline, Proposed Rules and Regulations Governing Procedure on Complaints and Hearings, Section 10, Guidelines for Imposing Lawyer Sanctions.