[Cite as *Cincinnati Bar Assn. v. Buckley*, 94 Ohio St.3d 333, 2002-Ohio-884.]

CINCINNATI BAR ASSOCIATION *v.* BUCKLEY.

[Cite as *Cincinnati Bar Assn. v. Buckley* (2002), 94 Ohio St.3d 333.]

*Attorneys at law — Misconduct — Two-year suspension with second year of sanction stayed with conditions — Engaging in a course of conduct in which attorney participated in sham settlement negotiations and agreed to false stipulations to the detriment of the client and did not stop this conduct until confronted by client.*

(No. 01-1877 — Submitted November 28, 2001 — Decided February 20, 2002.)

ON CERTIFIED REPORT by the Board of Commissioners on Grievances and Discipline of the Supreme Court, No. 01-06.

_____

*Per Curiam.* Vulcan Blanchester Realty Corporation ("VBRC") and BI Properties, Inc. ("BI Properties") were partners that transacted business as Cincinnati Club Building Associates ("CCBA"). The assets of CCBA included a promissory note from Dawson Realty, Ltd. ("Dawson") in the principal amount of $900,000, which was due on August 1, 2005. In 1998, Dawson prepaid the note in full, and the proceeds were distributed to the partners. VBRC received over $863,000, and BI Properties received over $22,000.

In August 1999, BI Properties filed a complaint in the Hamilton County Court of Common Pleas against VBRC. BI Properties alleged that VBRC was liable for damages caused by breaching its fiduciary duty to and concealing material facts from BI Properties. More specifically, BI Properties claimed that VBRC had full prior knowledge of the 1998 payoff of the promissory note by Dawson, but it concealed this fact from BI Properties because VBRC wanted to keep the vast majority of the proceeds, notwithstanding the expressed interest of BI Properties in readjusting the partnership interests.

In the common pleas court action, VBRC was represented by respondent, Dennis J. Buckley of Cincinnati, Ohio, Attorney Registration No. 0030863. In VBRC's answer and amended answer, it denied prior knowledge of the prepayment of the note.

After one of the Dawson partners testified in a deposition that VBRC knew that Dawson intended to repay the note at least seven months before the actual closing, BI Properties, through its counsel, sent a letter dated March 10, 2000, to respondent. In the letter, BI Properties stated that unless VBRC agreed to settle the lawsuit by purchasing BI Properties' interest in the partnership for $875,000, it would allege fraud and ethics violations by respondent, amend the complaint to add fraud allegations and to seek punitive damages against VBRC, move to disqualify respondent as trial counsel for VBRC, seek Civ.R. 11 sanctions against respondent, and subpoena respondent's unprotected files as counsel for VBRC.

Respondent received the March 10 letter, but he did not inform VBRC of either the letter or BI Properties' threatened actions. Instead, respondent acted to protect his own interests by engaging in settlement discussions with BI Properties without informing VBRC. On May 22, 2000, in order to protect his own personal interests and to prevent BI Properties from filing the pleadings it had threatened to file in its March 10 letter, respondent signed a joint pretrial statement that contained false and inaccurate stipulations. Although the trial date in the common pleas court action was set for June 5, 2000, respondent did not prepare the case for trial.

On May 31, 2000, VBRC's chief executive officer learned of the unauthorized settlement discussions and confronted respondent. Respondent acknowledged that he had not been authorized to settle the case and that he had engaged in these actions to avoid personal fraud and ethics allegations being

2

raised by opposing counsel. VBRC's CEO then told respondent that he could not continue to serve as VBRC's counsel.

On June 1, 2000, respondent filed a motion to withdraw as counsel for VBRC, and he subsequently admitted in a deposition that he had engaged in sham settlement negotiations to advance his personal interests. As a result of respondent's misconduct, the parties in the common pleas court action have incurred substantial financial damages, notwithstanding that the common pleas court subsequently granted VBRC's motion and declared that there had not been a settlement of the case.

On February 5, 2001, relator, Cincinnati Bar Association, filed a complaint charging respondent with violating several Disciplinary Rules. After respondent filed an answer, the matter was referred to a panel of the Board of Commissioners on Grievances and Discipline of the Supreme Court ("board").

Based on the pleadings, stipulations, testimony, and exhibits, the panel found the facts as previously set forth and concluded that by his conduct, respondent had violated DR 1-102(A)(4) (engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation), 1-102(A)(5) (engaging in conduct that is prejudicial to the administration of justice), 1-102(A)(6) (engaging in conduct that adversely reflects on lawyer's fitness to practice law), 7-101(A)(2) (intentionally failing to carry out employment contract entered into with a client for professional services), 7-101(A)(3) (intentionally prejudicing or damaging his client during the course of the professional relationship), 7-102(A)(1) (asserting a position, conducting a defense, delaying a trial, or taking other action on behalf of his client when he knows or when it is obvious that such action would serve merely to harass or maliciously injure another), 7-102(A)(2) (knowingly advancing a claim or defense that is unwarranted under existing law), and 7-102(A)(5) (knowingly making a false statement of law or fact).

In mitigation, the panel found that respondent, who had been admitted to the practice of law in Ohio in 1973, had not been the subject of any disciplinary complaint or proceeding in Ohio before this proceeding. The panel also found that respondent's conduct was not the result of any selfish motive and that he did not personally profit from his misconduct. Respondent admitted his misconduct in both the common pleas court case and this proceeding. Before the litigation between VBRC and BI Properties, respondent had very little trial experience, and he testified before the panel that, in the future, he would try not to get involved in trial litigation. Respondent admitted that he had no malpractice insurance when the misconduct that gave rise to this proceeding occurred.

The panel further found that respondent had been a heavy drinker for thirty years and that he had been referred to John T. Niehaus, a licensed independent social worker experienced in substance-abuse counseling, by colleagues and friends who had been concerned about respondent's drinking. Niehaus determined that respondent's symptoms of alcoholism included blackouts, a pattern of regular intoxication, psychological blindness to both the presence and consequences of his drinking, and personality changes. When impaired by alcohol, respondent had a tendency to procrastinate, minimize the seriousness of work and personal situations, and withdraw from conflict. On August 28, 2001, respondent entered into a recovery contract with the Ohio Lawyers Assistance Program, Inc. ("OLAP") and, as of the time of the hearing, had complied with that contract.

The panel adopted the recommended sanction of the parties by recommending that respondent be suspended from the practice of law in Ohio for two years, the second year of the suspension to be stayed provided that respondent shall comply with and meet all of the terms of his OLAP recovery contract, that he be monitored by OLAP during the two-year period, and that the term of the OLAP recovery contract be extended so that its termination shall coincide with

the expiration of the two-year period of his suspension. The panel further recommended that during the stayed portion of respondent's suspension, he maintain professional liability insurance in the minimum amount of $100,000 per occurrence and $300,000 in the aggregate. The board adopted the findings, conclusions, and recommendation of the panel and further recommended that the costs of the proceedings be taxed to respondent.

After reviewing the record, we adopt the findings and conclusions of the board except for its conclusion that respondent's misconduct was "not the result of a selfish motive." To the contrary, the parties' stipulations indicate that respondent's actions were motivated by selfishness, *i.e.,* a desire to protect his own personal interests rather than the interests of his client, VBRC.

Nevertheless, we also adopt the recommended sanction of the board. " '[W]hen an attorney engages in a course of conduct resulting in a finding that the attorney has violated DR 1-102(A)(4), the attorney will be actually suspended from the practice of law for an appropriate period of time.' " *Cleveland Bar Assn. v. Knowlton* (1998), 81 Ohio St.3d 76, 78, 689 N.E.2d 538, 539, quoting *Disciplinary Counsel v. Fowerbaugh* (1995), 74 Ohio St.3d 187, 190, 658 N.E.2d 237, 240; *Disciplinary Counsel v. Papcke* (2000), 88 Ohio St.3d 161, 163, 724 N.E.2d 407, 409.

Respondent engaged in a course of conduct in which he participated in sham settlement negotiations and agreed to false stipulations to the detriment of his client and did not stop this conduct until he was confronted by his client. Suspension is therefore warranted.

Respondent's conduct, however, is mitigated by his lack of a prior disciplinary record, his cooperative attitude throughout these disciplinary proceedings, and his demonstrated commitment to sobriety. A two-year suspension, with the second year stayed on the conditions specified by the board, is an appropriate sanction for respondent's misconduct. Cf., *e.g., Akron Bar Assn.*

*v. Meyer* (1999), 87 Ohio St.3d 324, 325, 720 N.E.2d 900, 901; *Akron Bar Assn. v. Thomas* (1999), 84 Ohio St.3d 395, 396-397, 704 N.E.2d 562, 563; *Cincinnati Bar Assn. v. Stidham* (2000), 87 Ohio St.3d 455, 464, 721 N.E.2d 977, 984.

Respondent is hereby suspended from the practice of law for two years with the second year stayed, provided that respondent shall comply with and meet all of the terms of his OLAP recovery contract, that he shall be monitored by OLAP during this two-year period, that the term of the recovery contract shall be extended, at a minimum, so that its termination shall coincide with the expiration of the two-year period of his suspension, and that while he practices with his suspension stayed, he maintain professional liability insurance in the minimum amount of $100,000 per occurrence and $300,000 in the aggregate.  Costs are taxed to respondent.

Judgment accordingly.

MOYER, C.J., DOUGLAS, RESNICK, F.E. SWEENEY, PFEIFER, COOK and LUNDBERG STRATTON, JJ., concur.

_____

Strauss & Troy and Franklin A. Klaine, Jr.; and John B. Pinney, for relator.

Michael E. Maundrell, for respondent.

_____

6