Disciplinary Counsel *v.* Watson.

[Cite as *Disciplinary Counsel v. Watson,*
107 Ohio St.3d 182, 2005-Ohio-6178.]

(No. 2005–0398—Submitted June 28, 2005—Decided December 7, 2005.)

———

**Per Curiam.**

{¶ 1} Respondent, Michael Troy Watson of Cleveland, Ohio, Attorney Registration No. 0029023, was admitted to the Ohio bar in 1983. On May 22, 2002, we suspended respondent from the practice of law in Ohio for one year for professional misconduct. See *Disciplinary Counsel v. Watson,* 95 Ohio St.3d 364, 2002-Ohio-2222, 768 N.E.2d 617. On December 26, 2002, we suspended respondent for another two years for additional misconduct. The last year of the second suspension was stayed on conditions, and respondent was ordered to serve this

suspension consecutively with the prior suspension. See *Disciplinary Counsel v. Watson,* 98 Ohio St.3d 181, 2002-Ohio-7088, 781 N.E.2d 212. We have never readmitted respondent to practice law in this state.

{¶ 2} On March 24, 2004, relator, Disciplinary Counsel, charged respondent in an amended 13–count complaint with numerous additional violations of the Code of Professional Responsibility. A panel of the Board of Commissioners on Grievances and Discipline heard the cause and made findings of misconduct and recommended respondent's permanent disbarment. The board adopted the panel's report in full.

## Misconduct

{¶ 3} The board agreed with the panel's dismissal of some alleged Disciplinary Rule violations for insufficient evidence. The board also accepted the panel's dismissal of Count XII, which the panel did at relator's request. All the misconduct found by the panel and board arose from respondent's representation of eight clients between 1999 and 2002.

## Count I

{¶ 4} In January 2002, JoAnn M. Holsopple retained respondent to represent her in an employment-discrimination suit, accepting the case on a 40 percent contingent-fee basis. Respondent also requested a cash retainer, and Holsopple paid him a total of $2,000. Respondent filed suit in February 2002.

{¶ 5} Respondent did not inform Holsopple of his May 22, 2002 suspension until July 23, 2002. That day, respondent explained that he was turning over her file to another lawyer, but that he would still be Holsopple's attorney, just not lead counsel. He also asked Holsopple to write a letter to this court opposing his suspension, which she did. In another letter dated July 23, 2002, Holsopple expressed her gratitude that respondent had remained her attorney, albeit not as lead counsel.

{¶ 6} Holsopple did not know the other lawyer who was supposed to be on her case and apparently did not agree to the referral. In fact, respondent promised Holsopple that he would prepare her for depositions, answer all her questions, and instruct the second lawyer on what to say in court. In August 2002, respondent did prepare Holsopple for a deposition.

{¶ 7} Respondent also asked Holsopple to pay $500 of his retainer to the second lawyer so that he could pass the money back to respondent. Holsopple wrote a $500 check as requested, but she later stopped payment and called this court to inquire about the particulars of respondent's suspension. Thereafter, Holsopple repeatedly asked for her file, but neither respondent nor the second lawyer returned it. She finally got her file in October 2002, after she retained

yet another lawyer. The new lawyer also asked for the return of Holsopple's retainer, but that has not been repaid.

{¶ 8} The board found that in representing Holsopple, respondent had violated DR 1–102(A)(4) (barring conduct involving dishonesty, fraud, deceit, or misrepresentation), 1–102(A)(5) (barring conduct prejudicial to the administration of justice), 1–102(A)(6) (barring conduct adversely reflecting on the lawyer's fitness to practice law), 2–103(A) (prohibiting one lawyer's unsolicited recommendations of another lawyer's employment, except as permitted by DR 2–101), 2–110(A)(3) (requiring the refund of unearned fees upon a lawyer's withdrawal from employment), 2–110(B)(4) (requiring a lawyer's withdrawal from employment upon discharge), 3–101(B) (prohibiting practice in violation of professional regulations in that jurisdiction), and 9–102(B)(4) (requiring a lawyer to deliver funds and property a client is entitled to receive), and Gov.Bar R. V(8)(E) (requiring the performance of various duties upon suspension).

## Count II

{¶ 9} In responding to relator's inquiries about Holsopple's case, respondent falsely denied in a letter and under oath that his client had asked for the return of her file and fee. He also falsely denied that he had promised to represent Holsopple notwithstanding the suspension of his license to practice. Moreover, respondent did not comply with a request to produce his client-trust-account records and an accounting of the fees Holsopple paid. The board found that respondent had thereby violated DR 1–102(A)(4) and 1–102(A)(5) and Gov.Bar R. V(4)(G) (requiring lawyers to cooperate in a disciplinary investigation).

## Count III

{¶ 10} Respondent represented Nadyne Turner in October 2001, defending her against a former employee's lawsuit. During that litigation, respondent failed to respond to an order for a more definite statement, did not timely answer interrogatories and requests for admissions, and failed to appear for a deposition. He also failed to reply to the employee's motion to compel discovery and to deem the unanswered requests for admissions admitted.

{¶ 11} After respondent's May 2002 suspension, he informed Turner that another lawyer, G. Michael Goins, would assist him with her case, but he forbade Turner to speak with Goins until respondent had introduced them. Turner met Goins for the first time on September 9, 2002, the day of a hearing on discovery disputes that developed before respondent's suspension and the possibility of sanctions against Turner for respondent's failure to comply. At that hearing, the court granted a default judgment and sanctions against Turner for over $200,000.

This order was later reversed and remanded on appeal but only as to the amount of damages.

{¶ 12} On June 17, 2002, nearly one month after his first suspension from practice, respondent met with Turner in an attempt to settle a legal-malpractice case against another lawyer on her behalf. Respondent arranged for Turner to sign the settlement agreement, and he witnessed her signature. Later in September 2002, respondent helped Turner prepare answers to interrogatories that were to be presented in response to discovery concerns at the September 9, 2002 show-cause hearing. Moreover, in September 2002, respondent telephoned Edmund Lee Wagoner, the attorney who represented Turner's former employee, to discuss the case against Turner.

{¶ 13} The board found that in representing Turner, respondent had violated DR 1–102(A)(4), 1–102(A)(5), 1–102(A)(6), 2–103(A), 3–101(B), 6–101(A)(3) (barring the neglect of an entrusted legal matter), 7–101(A)(2) (barring the intentional failure to carry out a contract for professional employment), and 7–101(A)(3) (barring a lawyer from intentionally causing a client prejudice or damage during representation), and Gov.Bar R. V(8)(E).

## Count IV

{¶ 14} In responding to relator's inquiries about Turner's case, respondent falsely denied in a letter and under oath that he had continued to provide legal counsel to Turner after his suspension. The board found that respondent had thereby violated DR 1–102(A)(4) and 1–102(A)(5) and Gov.Bar R. V(4)(G).

## Count V

{¶ 15} Edna Bray hired respondent in March 2001 to file a legal-malpractice case and paid him a $1,000 fee. Respondent filed the lawsuit; however, on the day of trial, he dismissed the case without his client's knowledge or approval.

{¶ 16} Respondent eventually refiled Bray's case. On May 30, 2002, after his suspension, respondent accepted Bray's check for $500 in partial payment of his fee. Although she had left blank the space for identifying the payee, Bray noticed after the check was negotiated that the name of another lawyer in respondent's office, Yvonne Harris, had been written in as payee. The check was later deposited in respondent's personal account. Bray had not hired Harris to represent her, nor did she know who Harris was. After Bray wrote the check, respondent told Bray that he had been suspended. Respondent has not refunded any of Bray's money.

{¶ 17} The board found that in representing Bray, respondent had violated DR 1–102(A)(4), 1–102(A)(5), 1–102(A)(6), 2–107(A) (allowing division of fees between

attorneys who are not in the same firm only under limited conditions), 2–110(A)(3), and 9–102(B)(4) and Gov.Bar R. V(8)(E).

## Count VI

{¶ 18} A letter of inquiry was sent to respondent on October 9, 2002, regarding the Bray case. After several extensions, respondent finally responded to the letter on January 13, 2003, the day before his deposition. Under oath during his deposition, respondent falsely claimed that Bray gave him the $500 check because she intended to hire Harris to do some legal work and he denied having received the funds. Respondent also failed to comply with relator's request for accounting records concerning the Bray case.

{¶ 19} The board found that respondent had thereby violated DR 1–102(A)(4) and 1–102(A)(5) and Gov.Bar R. V(4)(G).

## Count VII

{¶ 20} Angela Lockhart hired respondent in April 2000 to file a sex-discrimination lawsuit against an employer. Lockhart paid a $2,500 retainer fee and also entered into a contingent-fee agreement. Respondent filed the case, but he failed to respond to the defense's motion for summary judgment. When the defense filed a motion for default, respondent voluntarily dismissed Lockhart's case without her knowledge or approval. Respondent later lied to Lockhart, telling her that the defendant had been able to get the case dismissed.

{¶ 21} Respondent eventually refiled Lockhart's case and learned at a February 6, 2002 hearing that the final pretrial hearing date would be May 14, 2002. On the day before the hearing, respondent told Lockhart that he had not received notice of pretrial and that there must not be one scheduled. As a result, neither he nor Lockhart appeared for the hearing that took place on May 14, 2002.

{¶ 22} On May 23, 2002, notwithstanding his suspension from practice, respondent discussed settlement with opposing counsel and offered lower terms than Lockhart had approved. During June, July, and September 2002, respondent continued to represent Lockhart by reviewing court filings, correspondence, and depositions, and, at one point, coaching her for her trial testimony. Respondent also participated in conference calls concerning the settlement between himself, Lockhart, and another attorney whom respondent had brought into the case without first consulting Lockhart.

{¶ 23} The board found that in representing Lockhart, respondent violated DR 1–102(A)(4), 1–102(A)(5), 1–102(A)(6), 2–103(A), 3–101(B), 6–101(A)(3), 7–101(A)(2), and 7–101(A)(3) and Gov.Bar R. V(8)(E).

## Count VIII

{¶ 24} On October 10, 2002, relator sent a letter of inquiry to respondent regarding the Lockhart matter. Respondent finally replied on January 13, 2003, the day before his deposition. In his response and in his deposition, respondent falsely stated that he had consulted Lockhart prior to dismissing her case, that he did not make any settlement offers without consulting Lockhart, and that he did not continue to represent her after his suspension.

{¶ 25} The board found that respondent had thereby violated DR 1–102(A)(4) and 1–102(A)(5) and Gov.Bar R. V(4)(G).

## Count IX

{¶ 26} On June 25, 2002, over one month after respondent's first suspension became effective, Kent Minshall, another attorney, received a telephone message stating that respondent had a very important message for him. When Minshall returned the call, respondent told him that he represented Mike Ibrahim, who was having trouble with a liquor-license transfer. During the conversation, respondent specifically referred to Ibrahim as his client, and he said nothing about his suspension from practice.

{¶ 27} Though respondent admitted that Ibrahim had been his client and that he had talked to Minshall in June 2002, respondent falsely represented under oath that he had not called Minshall about a client's legal concern. Respondent instead suggested that he had simply returned a call received on his cell phone to a number he did not recognize that turned out to be Minshall's.

{¶ 28} The board found that respondent's conduct in the Minshall incident and his explanation of it violated DR 1–102(A)(4), 1–102(A)(5), 1–102(A)(6), and 3–101(B) and Gov.Bar R. V(8)(E).

## Count X

{¶ 29} Respondent also represented Daniel Pipkins, a landlord, in December 1999, in connection with a series of claims or judgments that Pipkins had involving 20 different tenants. Pipkins paid respondent a $200 retainer and also entered into a contingent-fee agreement.

{¶ 30} After Pipkins had filed a case himself against one of the tenants, respondent mistakenly entered a notice of appearance on December 8, 1999, as the tenant's attorney. Respondent thereafter did not respond to a motion for summary judgment despite having received two extensions. When the last extension expired, respondent instead dismissed the complaint without Pipkins's knowledge or consent. Respondent later refiled the case but then failed to appear for a pretrial hearing and at a later show-cause hearing. The court

consequently dismissed the case, and respondent never told Pipkins about the disposition.

{¶ 31} At about the same time, Pipkins asked respondent to pursue a claim against a second tenant. Respondent did nothing in the case. He was also supposed to collect 18 judgments that had been awarded to Pipkins but did no work in those cases.

{¶ 32} Pipkins asked several times for the return of all his files. Respondent did not comply, keeping the files until June 2002. After his suspension, respondent asked Pipkins to allow one of his associates to continue as Pipkins's counsel. He promised Pipkins that he would look over the associate's shoulder until the cases were resolved.

{¶ 33} Respondent denied or could not recall these events during his deposition and falsely claimed at the panel hearing that he had informed Pipkins that his claim against the first tenant had been dismissed.

{¶ 34} The board found that in representing Pipkins, respondent had violated DR 1–102(A)(4), 1–102(A)(5), 1–102(A)(6), 2–103(A), 6–101(A)(3), 7–101(A)(2), 7–101(A)(3), and 9–102(B)(4).

## Count XI

{¶ 35} Donna Baltz consulted respondent in early 2001 about representation in a medical-malpractice claim against the Cleveland Clinic. Baltz eventually paid respondent $1,500 so that he could obtain an expert medical opinion. Respondent has not produced the opinion, nor has he refunded Baltz's money.

{¶ 36} In July 2001, respondent entered an appearance in the lawsuit that Baltz had already filed herself. On February 13, 2002, Baltz appeared for the final pretrial. Respondent did not appear, but had earlier filed an entry of voluntary dismissal in the case without Baltz's consent or knowledge. The court approved the dismissal entry, the cause was eventually dismissed in March 2002, and respondent never refiled it, nor did he return Baltz's case file.

{¶ 37} The board found that in representing Baltz, respondent had violated DR 1–102(A)(5), 1–102(A)(6), 6–101(A)(3), and 7–101(A)(2).

## Count XIII

{¶ 38} Respondent represented Nathaniel Jones beginning in October 2001 for the purpose of adding him as a plaintiff to a lawsuit that respondent had filed on behalf of other clients against a board of elections. By January 2002, Jones had paid respondent $1,100, but respondent filed nothing on Jones's behalf. Respondent has repeatedly promised to repay Jones, but he has not.

{¶ 39} The board found that in representing Jones, respondent had violated DR 1–102(A)(5), 1–102(A)(6), 6–101(A)(3), and 7–101(A)(2) and Gov.Bar R. V(8)(E).

## Sanction

{¶ 40} In recommending a sanction, the board considered the mitigating and aggravating features of respondent's case. See Section 10 of the Rules and Regulations Governing Procedure on Complaints and Hearings Before the Board of Commissioners on Grievances and Discipline ("BCGD Proc.Reg.").

{¶ 41} In mitigation, the board found that respondent had expressed remorse for his misconduct during the panel hearing. The board found respondent's expression of contrition, however, to be "carefully worded and contrived," with his emphasis placed on how much he regretted the work he had lost during his suspension and not on the considerable harm his misconduct had caused clients. Rather than reflecting regret, respondent's demeanor while apologizing was marked by defiance. He did not, in fact, acknowledge that any of his actions constituted a violation of ethical standards. See BCGD Proc.Reg. 10(B)(1)(g).

{¶ 42} Respondent has been sanctioned twice before for unethical conduct and chastised for his refusal to take responsibility for his transgressions. BCGD Proc.Reg. 10(B)(1)(a). The board found that the prior cases, together with the numerous disciplinary violations proved here, established a pattern of misconduct, multiple offenses, and recidivism of a dimension rarely seen. BCGD Proc.Reg. 10(B)(1)(c) and (d). Respondent routinely failed to keep clients informed about their cases, to appear for court hearings, and to comply with discovery requests. Respondent also dismissed cases without the client's knowledge, kept unearned fees, ignored client requests for the return of files, refused to cooperate in the disciplinary process, and continued or offered to continue in the practice of law despite the suspension of his license.

{¶ 43} Last, the board found that respondent acted deceptively during the disciplinary process. He attempted to delude relator, the panel, and, at times, his own supporters. Respondent testified falsely at his deposition, and he provided false evidence and testimony throughout the investigation of his misconduct and at the panel hearing. Although respondent submitted scores of letters and much testimony from people urging his reinstatement to practice, none acknowledged the extent of the new charges of misconduct against him, suggesting that respondent had not been forthcoming about the underlying complaint. In fact, one witness testified to his impression that respondent's third panel hearing was actually a hearing on his reinstatement, and respondent confirmed under oath that he also considered the hearing a reinstatement proceeding.

{¶ 44} Relator advocated permanent disbarment. Respondent urged dismissal of the complaint. Anticipating a recommendation that the board would recommend yet another suspension, however, respondent argued in the alternative for an order that any suspension be served concurrently with his previous suspensions, that he be provided with credit for time served, and that he be permitted to reapply immediately for reinstatement to the practice of law. Adopting the panel's recommendation, the board recommended, based on the extraordinary amount and nature of misconduct in this case, that respondent be permanently disbarred.

## Review

{¶ 45} Respondent objects vigorously to the board's report, attempting at great length to undermine the board's reliance on the panel's credibility determinations. Upon review of this voluminous record, however, we find respondent's testimony as to the underlying events completely untrustworthy. Respondent's ability to tell the truth was described as "questionable" even by his own witness. Moreover, we simply do not believe, as respondent persistently insisted, that each witness who contradicted his version of the facts was either "a liar" or had testified to "an outright lie." We thus accept the panel's and the board's evidentiary assessments and find that respondent committed the cited violations of the Disciplinary Rules and Gov.Bar R. V(4)(G) and V(8)(E). Moreover, we agree that respondent's disbarment is warranted.

{¶ 46} The evidence in this case is overwhelmingly clear and convincing. Respondent repeatedly neglected his clients' interests. He repeatedly misrepresented events or lied to his clients and others, including relator and the board. He repeatedly failed to do what his clients asked of him. He repeatedly took his clients' money, did nothing for it, and neither accounted for the funds nor returned the unearned portions. He repeatedly failed to return his clients' files on request. Respondent furthermore did not cooperate in the disciplinary process and has not made restitution. These ethical improprieties, respondent's significant record of professional discipline, and repeated violations of the court-ordered suspension of his license are ample reason for the recommendation to disbar. *Cleveland Bar Assn. v. Glatki* (2000), 88 Ohio St.3d 381, 726 N.E.2d 993.

{¶ 47} Respondent is therefore permanently disbarred from the practice of law in Ohio. Costs are taxed to respondent.

Judgment accordingly.

MOYER, C.J., RESNICK, PFEIFER, LUNDBERG STRATTON, O'CONNOR, O'DONNELL and LANZINGER, JJ., concur.

Jonathan Coughlan, Disciplinary Counsel, and Robert R. Berger, Assistant Disciplinary Counsel, for relator.

Michael Troy Watson, pro se.