[This opinion has been published in *Ohio Official Reports* at 88 Ohio St.3d 381.]

CLEVELAND BAR ASSOCIATION *v.* GLATKI.

[Cite as *Cleveland Bar Assn. v. Glatki*, 2000-Ohio-354.]

*Attorney at law—Misconduct—Permanent disbarment—Engaging in a pattern of neglect with respect to client matters that caused potentially serious harm to clients—Accepting retainer and not refunding the unearned portions upon request—Receiving records and not returning them upon request.*

(No. 99-2270—Submitted February 9, 2000—Decided April 5, 2000.)

ON CERTIFIED REPORT by the Board of Commissioners on Grievances and Discipline of the Supreme Court, No. 99-27.

_____

{¶ 1} In June 1997, Hyancinth Marson and her husband paid respondent, Susan M. Glatki of Beachwood, Ohio, Attorney Registration No. 0052533, a retainer of $250 to represent them in an adoption matter. The Marsons did not hear from respondent for several months, despite repeated attempts by them to contact her about the status of their case. Finally, in October 1997, respondent telephoned the Marsons and assured them that she would proceed with the adoption. Respondent, however, never filed for adoption. In December 1997, the Marsons hired a new attorney, who requested that respondent deliver their file to her, including records, *i.e.*, medical reports and birth certificate, that the Marsons had given respondent. Respondent never returned the requested records, and the Marsons had to obtain the copies of the records themselves a second time.

{¶ 2} In August 1995, Lisa Nagle retained respondent to represent her in recovering a loan she had made to her former employer. Nagle paid respondent $650 in attorney fees. Respondent filed a complaint that was dismissed because respondent failed to appear for a scheduled hearing. After the dismissal was vacated, the defendants in the case filed a counterclaim against Nagle. Respondent

never notified Nagle of the pretrial or trial dates and erroneously advised Nagle that judgment would be entered in her favor. On the day before trial, respondent failed to attend the final pretrial conference and instead filed a notice of dismissal without Nagle's permission. The court dismissed Nagle's complaint and granted a default judgment on the defendants' counterclaim against Nagle in the amount of $2,000. Respondent never informed Nagle that the default judgment had been entered against her, that a judgment lien had been placed on her residence, or that her complaint had been dismissed. Nagle subsequently negotiated her own settlement of the dispute with her former employer.

{¶ 3} In August 1997, Julie R. Hamilton paid respondent a $500 retainer to file a motion for temporary emergency custody to remove her daughter from her ex-husband's custody. In September 1997, respondent prepared the motion and an affidavit that Hamilton signed, and respondent advised Hamilton that she would file the motion immediately. Respondent did not file the motion and did not respond to Hamilton's inquiries about the motion until July 1998. At that time, respondent had Hamilton sign another affidavit and again assured her that the motion would be filed immediately. But respondent did not file the motion and stopped all communication with Hamilton.

{¶ 4} In September 1997, Eugene Jones paid respondent a retainer of $500 to draft the necessary documents for his divorce. Respondent did not draft the documents and did not respond to Jones's attempts to contact her. In June 1998, Jones terminated respondent's representation of him and requested a refund of the retainer. Respondent never returned any portion of the retainer, and Jones eventually representing himself in divorce proceedings brought by his wife, who had retained her own attorney.

{¶ 5} In May 1997, Ralph E. Spyres paid respondent a retainer of $500 and later paid her an additional $1,000 to represent him in obtaining back child support payments. Respondent failed to provide Spyres with copies of pleadings that she

claimed to have filed on his behalf, and in February 1998, Spyres notified respondent that he was terminating her representation. Spyres requested a billing statement for all work performed by respondent, a copy of his file, and all child support payments that she had obtained on his behalf. Respondent never provided Spyres a billing statement or a copy of his file. Spyres also believed that respondent kept any child support funds she obtained for her own personal use.

{¶ 6} Marson, Nagle, Hamilton, Jones, and Spyres filed grievances against respondent with relator, Cleveland Bar Association. Respondent did not respond to relator's inquiries about the grievances or otherwise cooperate with relator's investigation of the grievances.

{¶ 7} On July 6, 1999, relator filed an amended complaint charging respondent with multiple violations of the Disciplinary Rules and a Rule for the Government of the Bar. After respondent failed to answer, the matter was referred to a master commissioner under Gov.Bar R. V(6)(F)(2) on relator's motion for default judgment.

{¶ 8} The master commissioner found the facts as previously set forth and further found that relator had not sufficiently documented its allegation that respondent had retained child support funds recovered on behalf of Spyres. The master commissioner concluded that respondent's conduct with respect to all five clients violated DR 6-101(A)(3) (neglecting an entrusted legal matter), 7-101(A)(1) (failing to seek lawful objectives of client), and 7-101(A)(2) (failing to carry out contract of employment). The master commissioner further concluded that respondent violated DR 9-102(B)(4) (failing to promptly pay or deliver to client upon request the funds, securities, or other properties in the possession of the lawyer that the client is entitled to receive) "with respect to each grievant by failing to return the unearned portion of their respective retainers."

{¶ 9} The master commissioner found respondent's conduct to be similar to that of the respondent in *Columbus Bar Assn. v. Emerson* (1999), 84 Ohio St.3d

375, 704 N.E.2d 238, and recommended that she be indefinitely suspended from the practice of law in Ohio. The Board of Commissioners on Grievances and Discipline of the Supreme Court ("board") adopted the findings, conclusions, and recommendation of the master commissioner.

———————————

*Jones, Day, Reavis & Pogue* and *Robert S. Faxon*; *Willacy & Lopresti* and *Keith A. Ganther*, for relator.

———————————

***Per Curiam.***

**{¶ 10}** In disciplinary proceedings, the complaint must allege the specific misconduct that violates the Disciplinary Rules, and the relator must prove such misconduct by clear and convincing evidence. *Ohio State Bar Assn. v. Reid* (1999), 85 Ohio St.3d 327, 331, 708 N.E.2d 193, 197; Gov.Bar R. V(6)(J). Applying this standard here, we adopt the findings and conclusions of the board insofar as it concluded that respondent's conduct regarding her five clients violated DR 6-101(A)(3), 7-101(A)(1), and 7-101(A)(2). We further find that although the board did not so conclude, relator charged and proved by the requisite clear and convincing evidence that respondent's conduct in the Marson, Nagle, and Hamilton matters violated DR 1-102(A)(4) (engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation). Relator misrepresented the status of each of these cases to her clients.

**{¶ 11}** We also disagree with the board's conclusion that respondent violated DR 9-102(B)(4) with respect to each client by failing to return the unearned portions of their respective retainers. Relator never charged any violation of this Disciplinary Rule in the Nagle and Hamilton matters. See *Disciplinary Counsel v. Simecek* (1998), 83 Ohio St.3d 320, 322, 699 N.E.2d 933, 934-935 (procedural due process requires fair notice of the precise nature of attorney disciplinary charges).

And there was no evidence of a request for a refund of the retainer, which is required for a violation of DR 9-102(B)(4), in either the Nagle or Hamilton matters.

{¶ 12} Nevertheless, we concur in the board's conclusion that respondent violated DR 9-102(B)(4) by not refunding the retainer upon request in the Jones matter because the violation was both properly charged and proven. We further conclude that respondent violated DR 9-102(B)(4) in the Marson and Spyres matters, but by failing to provide copies of their files upon request rather than the unearned portions of their retainers as the board determined. Like the Nagle and Hamilton matters, there was no evidence that Marson or Spyres requested refunds of their retainers.

{¶ 13} Based on the foregoing facts and conclusions, we next consider the appropriate sanction. In determining the appropriate sanction, we consider not only the duty violated but also the lawyer's mental state, the injury caused, and the existence of aggravating or mitigating circumstances. See *Warren Cty. Bar Assn. v. Bunce* (1998), 81 Ohio St.3d 112, 115, 689 N.E.2d 566, 568.

{¶ 14} Under the first three steps of this determination, the American Bar Association's Standards for Imposing Lawyer Sanctions support disbarment of respondent, who engaged in a pattern of neglect with respect to client matters that caused potentially serious injuries to her clients. See *Disciplinary Counsel v. Brown* (1999), 87 Ohio St.3d 316, 320-321, 720 N.E.2d 525, 529, quoting American Bar Association Center for Professional Responsibility, Standards for Imposing Lawyer Sanctions (1991 & Amend.1992), Standard 4.41. Respondent also violated duties to three of her clients by not returning upon request the property or money to which they were entitled. Further, respondent violated duties to the public, DR 1-102(A)(4), and the profession, Gov.Bar R. V(4)(G).

{¶ 15} Under the final step of our determination, we note that there was evidence of several aggravating circumstances, *i.e.*, a pattern of misconduct, multiple offenses, lack of cooperation in the disciplinary process, and, in the Jones

matter, a failure to make restitution. See Board of Commissioners on Grievances and Discipline, Proposed Rules and Regulations Governing Procedure on Complaints and Hearings, Section 10(A), Guidelines for Imposing Lawyer Sanctions, Ohio Official Reports, Nov. 22, 1999 Advance Sheets. By contrast, no evidence of any mitigating circumstances is evident from the record.

{¶ 16} Therefore, we are persuaded that a more severe sanction than the indefinite suspension recommended by the board is warranted. We note that unlike *Emerson*, the case the board relied upon, some violations of DR 9-102(B)(4) were charged and proven here. We hold that accepting retainers and not refunding the unearned portions of them upon request, as in the Jones matter, and receiving records and not returning them upon request, as in the Marson matter, are tantamount to a misappropriation of client funds and property. As we have consistently held, the normal sanction for misappropriation of client funds coupled with neglect of client matters is disbarment. *Cincinnati Bar Assn. v. Komarek* (1998), 84 Ohio St.3d 90, 96, 702 N.E.2d 62, 67. No mitigating circumstances exist that would warrant a lesser sanction here.

{¶ 17} Based on the foregoing, respondent is hereby permanently disbarred from the practice of law in Ohio. Costs taxed to respondent.

*Judgment accordingly.*

MOYER, C.J., DOUGLAS, RESNICK, PFEIFER and COOK, JJ., concur.

F.E. SWEENEY and LUNDBERG STRATTON, JJ., dissent and would suspend respondent indefinitely.

_____