[This decision has been published in *Ohio Official Reports* at 96 Ohio St.3d 138.]

CLEVELAND BAR ASSOCIATION *v.* HARRIS.

[Cite as *Cleveland Bar Assn. v. Harris*, 2002-Ohio-2988.]

*Attorneys at law—Misconduct—Indefinite suspension—Converting money entrusted by an institutionalized client—Failing to cooperate in disciplinary investigation.*

(No. 2001-2231—Submitted May 7, 2002—Decided July 31, 2002.)

ON CERTIFIED REPORT by the Board of Commissioners on Grievances and Discipline of the Supreme Court, No. 00-67.

_____

**Per Curiam.**

{¶1} We must decide in this case whether an attorney who converted money entrusted to him by an institutionalized client should be indefinitely suspended from the practice of law in Ohio. The Board of Commissioners on Grievances and Discipline of the Supreme Court recommended that sanction against respondent, Caesar M. Harris of Cleveland Heights, Ohio, Attorney Registration No. 0021529, after finding him in violation of DR 1-102(A)(4) and (6) (engaging in dishonest conduct or conduct that otherwise reflects adversely on his fitness to practice law), 2-106(A) (charging an excessive fee), 6-101(A)(3) (neglecting an entrusted legal matter), 7-101(A)(3) (prejudicing or damaging client during course of professional relationship), 9-102(B)(1), (3), and (4) (failing to promptly advise, account for, and return client's funds), and Gov.Bar R. V(4)(G) (failing to cooperate in a disciplinary investigation). We agree that an indefinite suspension is the appropriate punishment.

{¶2} Respondent, a solo practitioner, was originally retained in 1983 by a client to protect her interests in a divorce proceeding, particularly her right to alimony payments ordered by the Cuyahoga County Domestic Relations Court. By

January 1985, respondent had negotiated an agreement through which his client would receive fixed monthly alimony payments. In 1991, the client executed a special power of attorney appointing respondent as her attorney-in-fact to oversee her finances. Around the same time, the client's mental instability and, later, her adjudicated incompetence began necessitating a series of involuntary hospitalizations.

{¶3} During the next several years, the Cuyahoga County Support Enforcement Agency paid respondent at least $29,760.64 in alimony pursuant to the power of attorney. By November 6, 1998, however, respondent had personally exhausted all but $742.54 of this amount in what he would later describe as "petty-cash-type withdrawals." He gave the remaining $742.54 to Theresa Lockridge, his client's case manager at Northeast Community Health Center, in response to Lockridge's persistent attempts to recover all of the missing alimony and to get an accounting from respondent. Lockridge had submitted a grievance concerning respondent's conduct to relator, the Cleveland Bar Association.

{¶4} Respondent's client's guardian, Nelli Johnson, also took action to recover the missing alimony. She filed a complaint for concealment of assets against respondent in the Cuyahoga County Probate Court. That court found respondent guilty based on the itemized fee statement he had specifically prepared for the Cuyahoga County Support Enforcement Division to justify, long after the fact, the alimony money he had spent. The court considered the statement, which claimed that respondent had earned over $24,000 in fees, incredibly excessive and held that, at best, respondent could have legitimately charged his client only about one third of that amount.

{¶5} After investigating Lockridge's grievance, relator initiated this action on August 14, 2000, by filing a complaint with the board. A panel of the board heard the cause, including the parties' stipulations of fact, and found the facts as stated. Based on the panel's report, the board concluded that respondent had acted

dishonestly and unprofessionally in that he had charged an excessive fee, neglected his client's interests, and failed to appropriately account for his client's money and, thus, that he had violated the cited Disciplinary Rules. Moreover, because respondent repeatedly failed to respond to relator's inquiries during the investigation of this misconduct, the board found him in violation of Gov.Bar R. V(4)(G).

{¶6} We concur in the board's findings of misconduct and its recommendation that respondent be indefinitely suspended from the practice of law. While we historically have imposed the strictest discipline—permanent disbarment—in misappropriation cases, *Cleveland Bar Assn. v. Belock* (1998), 82 Ohio St.3d 98, 100, 694 N.E.2d 897, we have also recognized that a lesser penalty may be in order where sufficient mitigating factors exist and the board recommends it. *Disciplinary Counsel v. Kurtz* (1998), 82 Ohio St.3d 55, 693 N.E.2d 1080; *Cleveland Bar Assn. v. Knowlton* (1998), 81 Ohio St.3d 76, 689 N.E.2d 538. Here, in addition to the board's recommendation, we have before us an honorably discharged veteran who has been a member of the bar for twenty-seven years and has never been disciplined for professional misconduct before. Respondent has been active his entire life in the Open Door Missionary Baptist Church. His pastor and several professional acquaintances, including past and present members of the judiciary, submitted letters or gave testimony to assure us that respondent was dedicated and trustworthy. The probate court thought that some of respondent's efforts constituted legitimate professional services.

{¶7} Respondent's conduct toward his defenseless client is most certainly egregious. But the board recommended against permanent disbarment, and we can see some justification for leniency. We therefore order that respondent be suspended from the practice of law in Ohio for an indefinite period. Costs are taxed to respondent.

Judgment accordingly.

MOYER, C.J., DOUGLAS, RESNICK, F.E. SWEENEY and LUNDBERG STRATTON, JJ., concur.

PFEIFER and COOK, JJ., dissent.

_____

**COOK, J., dissenting.**

{¶8} I decline to follow the board's recommendation and would instead disbar Harris.

{¶9} The majority's characterization of the matter before this court—"We must decide in this case whether an attorney who converted money entrusted to him by an institutionalized client should be indefinitely suspended from the practice of law in Ohio"—suggests an incorrect analytic approach that necessitates comment at the outset. The court's analysis should not *begin* with whether an indefinite suspension is warranted. We have continually stated that when the misappropriation of client funds is among an attorney's acts of misconduct, the court begins with the presumptive sanction of disbarment. *Cleveland Bar Assn. v. Glatki* (2000), 88 Ohio St.3d 381, 384, 726 N.E.2d 993; *Disciplinary Counsel v. Wise* (1999), 85 Ohio St.3d 169, 171, 707 N.E.2d 852; *Disciplinary Counsel v. Connaughton* (1996), 75 Ohio St.3d 644, 645, 665 N.E.2d 675. Thus, precedent dictates that the threshold question must be whether there is any reason why we should *not* disbar Harris.

{¶10} The majority acknowledges our precedent calling for disbarment, but then proceeds to find that sufficient mitigating circumstances exist to impose a lesser sanction. I agree that a lack of prior discipline constitutes some mitigation. See Section 10(B)(2)(a) of the Rules and Regulations Governing Procedure on Complaints and Hearings Before the Board of Commissioners on Grievances and Discipline. I also accord some weight to Harris's character references. See Section 10(B)(2)(e). But I find his claim to other mitigating circumstances unpersuasive.

4

**{¶11}** The recommended sanction of the board—an indefinite suspension—is not a mitigating factor. And Harris's having been in practice for 27 years is not mitigating when his dishonesty in this case spanned more than one-third of that career.

**{¶12}** The majority "infers" from the foregoing claimed mitigation evidence, as well as from Harris's military service and his church activities, that Harris's misconduct arose from his misguided perception of his role and responsibility in the legal profession. I cannot agree. The panel taking the evidence characterized Harris's misconduct as "go[ing] to the very nature of the attorney-client relationship." It explained that "[a]ttorneys are charged with the duty of helping those in need of counsel and are further charged with doing justice. [Harris] has shown himself to not be of the fiber to perform these most basic tasks essential to being an attorney. One who cannot be counted on to protect the interests of a special needs client, or one who misappropriates the funds of any client, is unfit to practice law in the State of Ohio." I agree with the panel's assessment in these circumstances. If, as the majority "infers," Harris truly cannot understand this fundamental aspect of the practice of law after nearly three decades as a practitioner, then reinstatement seems improbable.

**{¶13}** This court has held that in most instances, "[t]he continuing public confidence in the judicial system and the bar requires that the strictest discipline be imposed in misappropriation cases." *Cleveland Bar Assn. v. Belock* (1998), 82 Ohio St.3d 98, 100, 694 N.E.2d 897. Harris stole from a client for many years. In an effort to cover up his actions, he submitted an incredible, excessive fee statement to the probate court. When confronted with a disciplinary inquiry, he repeatedly failed to cooperate. And he has failed to accept responsibility for the nature and severity of his actions. Harris has thus demonstrated contempt for the ethical considerations of this profession, for the courts, and for the disciplinary process.

**{¶14}** Because his mitigating circumstances do not offset the more compelling interest of protecting the public, this court should disbar Harris from the practice of law.

PFEIFER, J., concurs in the foregoing dissenting opinion.

―――――――――――

Arter & Hadden, L.L.P., Robert J. Hanna and Nicholas C. York, for relator.

Wesley A. Dumas, Sr., for respondent.

―――――――――――