CUYAHOGA COUNTY BAR ASSOCIATION *v.* JURCZENKO.

[Cite as *Cuyahoga Cty. Bar Assn. v. Jurczenko,*
106 Ohio St.3d 123, 2005-Ohio-4101.]

(No. 2004–2144—Submitted February 16, 2005—Decided August 24, 2005.)

**Per Curiam.**

{¶ 1} Respondent, Alexander Jurczenko, of Cleveland, Ohio, Attorney Registration No. 0030918, was admitted to the practice of law in Ohio in 1973. On June 28, 2004, relator, Cuyahoga County Bar Association, charged respondent in an amended five-count complaint with violations of the Code of Professional Responsibility. A panel of the Board of Commissioners on Grievances and Discipline heard the cause and made findings of fact, conclusions of law, and a recommendation, all of which the board adopted.

{¶ 2} The panel dismissed Count I, finding no clear and convincing evidence of the charged misconduct, and relator withdrew the charges alleged in Count V. Thus, we review the board's findings and recommendation relative to Counts II, III, and IV.

Misconduct

*Count II*

{¶ 3} Count II alleged that respondent did not carry professional-liability insurance and that he had not informed his clients that he lacked insurance.

Respondent admitted in his answer and testimony that he did not obtain malpractice insurance until August 2004 and that he had not previously notified his clients that he was uninsured. Adopting the panel's report, the board found that respondent had thereby violated DR 1–104 (requiring a lawyer to either maintain adequate professional-liability insurance or notify clients of the lack of insurance and obtain their signature acknowledging having received notice).

*Count III*

{¶ 4} Beginning in September 2002, respondent represented Hudson Home Remodeling, Inc. ("Hudson"), an Ohio corporation owned and managed by David Cueni and his wife. Cueni retained respondent to file a Chapter 11 bankruptcy for Hudson, whose assets were being attached by creditors. In November 2002, Cueni gave respondent a $2,000 check for attorney fees and an $835 check for court costs.

{¶ 5} Respondent prepared a draft petition but did not file it. Over the next few months, Cueni telephoned and faxed respondent repeatedly, asking respondent to contact him about the status of the case and the continuing attachment of Hudson's assets, among other matters. Respondent, however, rarely responded to Cueni, and by December 2002, respondent had essentially stopped communicating with him. By February 2003, the Cuenis had lost faith in respondent and consulted another attorney. The Cuenis asked for a refund in September 2003; however, respondent did not return the $835 that the Cuenis had given him for court costs until April 1, 2004, and he never refunded any of his $2,000 fee.

{¶ 6} Respondent defended his decision not to return the fee. He insisted that he had earned $2,000 by consulting with the Cuenis on numerous occasions, trying—unsuccessfully, he claimed—to get all the information and documentation he needed for the bankruptcy petition. Respondent also asserted that completing the petition was complicated and time-consuming because the Cuenis were involved in many interconnected businesses. Respondent's case file for the Hudson bankruptcy, however, did not contain any letters to the Cuenis or notes of conversations documenting respondent's claims, and Cueni denied them. Cueni testified that as far as he knew, respondent had everything he needed to prepare the petition.

{¶ 7} On August 26, 2003, the Cleveland Bar Association ("CBA"), working in conjunction with relator, sent respondent a certified letter asking that he respond in writing to the Cueni grievance by September 9, 2003. On September 11, 2003, an investigator sent respondent another certified letter requesting a response by September 25, 2003. On September 26, 2003, respondent delivered a letter acknowledging receipt of the investigator's letter and asking for an extension to respond. The extension was granted, but respondent still did not respond to the grievance. On October 21, 2003, an investigator sent respondent a certified letter

requesting that respondent meet with him and bring the Cueni case file to the meeting. Respondent did not respond to the investigator's letter.

{¶ 8} Respondent neither refunded nor specifically accounted for the $2,000 in attorney fees that he had been paid for handling Hudson's bankruptcy.

{¶ 9} For his neglect and other misconduct in connection with Count III, the board found respondent in violation of DR 6–101(A)(3) (barring an attorney from neglecting a legal matter) and 9–102(B)(4) (requiring a lawyer to pay on request funds to which the client is entitled)[1] and Gov.Bar R. V(4)(G) (requiring a lawyer to cooperate in an investigation of professional misconduct).

*Count IV*

{¶ 10} In June 2001, respondent agreed to file a Chapter 7 bankruptcy petition on Kathryn Crosby's behalf for a $500 fee and an additional $200 for court costs. In July 2001, Crosby paid respondent's fee and signed the bankruptcy petition. In August 2001, Crosby paid the remaining $200, and respondent promised to file her case within six weeks.

{¶ 11} Crosby later tried many times to reach respondent, but he did not return her calls. Respondent did not finish preparing Crosby's bankruptcy petition until December 21, 2001. He also dated the document December 21, 2001, notwithstanding that Crosby had actually signed it in July and had not talked to him since. Respondent never filed Crosby's petition, and Crosby was sued by a creditor in September 2002. When she was finally able to reach respondent, she told him about the lawsuit, and he offered to represent her in the case.

{¶ 12} Respondent defended his failure to file Crosby's bankruptcy petition, explaining that he could not proceed without causing Crosby to lose a house that she owned, which her daughter was living in. Respondent maintained that the house would have been sold if Crosby had filed for Chapter 7 bankruptcy because it had was not Crosby's residence, and she had equity in it. Crosby denied that respondent had ever told her this, although she acknowledged that she would not have gone forward with the bankruptcy if doing so would have meant losing the home her daughter was living in.

{¶ 13} On April 1, 2004, respondent refunded the $200 that Crosby had given him for court costs. He has not, however, accounted for or refunded the $500 fee.

{¶ 14} Crosby filed a grievance, and on January 23, 2003, CBA sent a certified letter to respondent requesting a written response by February 6, 2003. On

---

1. The complaint and the board's report cited DR 1–102(B)(4) but clearly described a violation of DR 9–102(B)(4).

February 12, 2003, an investigator sent a follow-up letter of inquiry. On April 8, 2003, another investigator sent respondent another letter, and on April 15 and May 2, 2003, the investigator attempted to contact respondent by phone. The investigator reached respondent by phone on May 8, 2003, and during their conversation, respondent admitted that he had not filed Crosby's bankruptcy petition despite having been paid to do so. Respondent agreed to meet with the investigator to review respondent's file on the Crosby matter but then canceled and rescheduled several times, ultimately never meeting with him. Relator received respondent's case file on the Crosby matter on September 13, 2004.

{¶ 15} For his neglect and other misconduct in connection with Count IV, the board found respondent in violation of DR 6–101(A)(3) and 9–102(B)(4) (which was again miscited as DR 1–102(B)(4)) and Gov.Bar R. V(4)(G).

Sanction

{¶ 16} In recommending a sanction for this misconduct, the board considered the mitigating and aggravating factors listed in Section 10 of the Rules and Regulations Governing Procedure on Complaints and Hearings Before the Board of Commissioners on Grievances and Discipline ("BCGD Proc.Reg."). In mitigation, the board found that respondent has had a long legal career with no record of prior grievances filed against him and that he had expressed remorse and a willingness to redress his wrongdoing. See BCGD Proc.Reg. 10(B)(2)(a) and (c). The board did not find any pattern of misconduct and observed that respondent has obtained malpractice insurance.

{¶ 17} Also in mitigation, respondent presented the testimony of two character witnesses, including Cuyahoga County Common Pleas Court Judge Burt Griffin. Judge Griffin testified that he has known respondent professionally for many years and that respondent has always been a careful, diligent, and hard-working attorney whom Griffin trusts. One of respondent's clients also testified and related that respondent had helped her son avoid being sued in relation to a $30,000 hospital bill. The client added that respondent had acted in the case immediately and refused to accept payment. Letters of recommendation extolling respondent's competence and integrity were also submitted.

{¶ 18} In aggravation, the board noted respondent's lack of cooperation in the investigation of his misconduct, not only in response to the investigations of Counts III and IV, but also in failing to respond to investigative inquiries concerning Count I. BCGD Proc.Reg. 10(B)(1)(e). Respondent attributed this lapse to his lack of appreciation for the disciplinary process and to his being offended that his clients had filed grievances against him. The board also noted as an aggravating factor that respondent had neither accounted for nor refunded his legal fees in the Hudson and Crosby cases.

{¶ 19} Relator recommended that respondent's license to practice be suspended for two years; however, the board adopted the panel's much more lenient recommendation. The board recommended that respondent be suspended from the practice of law for six months, with the suspension stayed on the conditions that respondent (1) immediately refund $2,000 to Hudson and $500 to Crosby, (2) complete six hours of continuing legal education in law-office management within 180 days, and (3) allow a member of the Cuyahoga County Bar Association to monitor his practice during the stayed suspension.

{¶ 20} We agree that respondent violated DR 1–104, 6–101(A)(3), and 9–102(B)(4) and Gov.Bar R. V(4)(G), as found by the board. We do not, however, adopt the board's recommendation for a stayed six-month suspension.

{¶ 21} As relator argued in closing before the panel, this case is about a complete failure to represent two clients. Having accepted their cases, respondent had a duty to communicate with these two clients—"to do that which was clearly agreed upon or to explain why it couldn't be done." We, like the panel and board, are convinced that respondent did not fulfill his duty. Respondent has also refused to refund or account for his legal fees, indicating his apparent disregard of his clients' interests and relator's investigative authority. For these reasons, an actual suspension of respondent's license is warranted.

{¶ 22} Advocating suspension, relator cited *Toledo Bar Assn. v. Meyer*, 95 Ohio St.3d 111, 2002-Ohio-1941, 766 N.E.2d 147, *Cincinnati Bar Assn. v. Kieft*, 94 Ohio St.3d 429, 2002-Ohio-1234, 763 N.E.2d 1167, and *Cleveland Bar Assn. v. Judge*, 94 Ohio St.3d 331, 2002-Ohio-886, 763 N.E.2d 114. The lawyers in *Meyer*, *Kieft*, and *Judge* were indefinitely suspended for similar misconduct, but all of those cases were decided on motions for default, without any appearance by the lawyers. Respondent's neglect, failure to account, and lack of cooperation represent a serious breach of the public trust, but at least he fulfilled his responsibility to answer the formal complaint and appear at the hearing. Moreover, respondent has had a long legal career untainted by disciplinary sanction, which is also mitigating. *Cleveland Bar Assn. v. Harris*, 96 Ohio St.3d 138, 2002-Ohio-2988, 772 N.E.2d 621, ¶ 6.

{¶ 23} For the preceding misconduct, we find that a two-year suspension with one year stayed on the recommended conditions is the appropriate sanction. Respondent is therefore suspended from the practice of law in Ohio for two years; however, the second year of this suspension is stayed on the conditions that respondent (1) refunds $2,000 to Hudson and $500 to Crosby within 30 days of our order, (2) completes six hours of continuing legal education in law-office management within 180 days of our order, and (3) completes a one-year probation during the stayed suspension period and allows a member of the Cuyahoga

County Bar Association to monitor his practice pursuant to Gov.Bar R. V(9). Costs are taxed to respondent.

*Judgment accordingly.*

MOYER, C.J., O'CONNOR, O'DONNELL and LANZINGER, JJ., concur.

PFEIFER and LUNDBERG STRATTON, JJ., concur in part and dissent in part.

RESNICK, J., dissents and would suspend respondent for six months, all stayed on conditions.

———

**LUNDBERG STRATTON, J., concurring in part and dissenting in part.**

{¶ 24} I dissent from the majority's opinion as to the sanctions. I would stay the entire two years, but I agree with the monitoring and other conditions imposed.

PFEIFER, J., concurs in the foregoing opinion.

———

Gary S. Fishman, Thomas Rein, and Ellen S. Mandell, for relator.

Lester S. Potash, for respondent.