**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as** *Disciplinary Counsel v. Hunter*, **Slip Opinion No. 2025-Ohio-2406.]**

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports.  Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2025-OHIO-2406

DISCIPLINARY COUNSEL *v*. HUNTER.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Disciplinary Counsel v. Hunter*, Slip Opinion No. 2025-Ohio-2406.]**

*Attorneys—Misconduct—Violations of the Rules of Professional Conduct—Two-year suspension with six months conditionally stayed.*

(No. 2024-1720—Submitted February 11, 2025—Decided July 9, 2025.)

ON CERTIFIED REPORT by the Board of Professional Conduct of the Supreme Court, No. 2023-035.

_____

The per curiam opinion below was joined by DEWINE, DETERS, HAWKINS, and SHANAHAN, JJ.  KENNEDY, C.J., concurred in part and dissented in part, with an opinion.  FISCHER, J., concurred in part and dissented in part, with an opinion. BRUNNER, J., did not participate.

**Per Curiam.**

{¶ 1} Respondent, Jeffrey Dwight Hunter, of Pickerington, Ohio, Attorney Registration No. 0061364, was admitted to the practice of law in Ohio in 1993. He was suspended for a day in 2009 for his failure to register and pay his attorney-registration fee. *See In re Attorney Registration Suspension of Hunter*, 2009-Ohio-5786. In this case, Hunter acknowledges that while representing three different criminal defendants in postconviction matters, he failed to exercise the diligence required of a lawyer, failed to reasonably communicate with his clients, mismanaged client funds, and lied to his clients. He admits that he lied to the tribunal and failed to refund unearned fees in one of those cases and that he failed to provide competent representation in two of the cases. At a hearing before a three-member panel of the Board of Professional Conduct, Hunter admitted that his misconduct violated at least 11 professional-conduct rules, for a total of 19 violations.

{¶ 2} After Hunter and relator, disciplinary counsel, stipulated to all relevant facts, the charged misconduct, and aggravating and mitigating factors, the panel and board found by clear and convincing evidence that Hunter had committed the charged misconduct. Based on the panel's recommendation, the board urges us to suspend Hunter from the practice of law for two years but stay the last six months of the suspension on the conditions that he return unearned funds in two of his cases and pay the costs of this proceeding. The board also recommends as an additional condition of his reinstatement that Hunter be required to submit to an assessment by the Ohio Lawyers Assistance Program ("OLAP") and comply with any resulting treatment and counseling recommendations. Although we granted Hunter's motion to extend his time to file objections, no objections have been filed. For the reasons that follow, we adopt the board's findings of misconduct and its recommended sanction.

## I. HUNTER'S MISCONDUCT

{¶ 3} The parties stipulated to, and the board found by clear and convincing evidence, facts showing that Hunter engaged in a series of acts of misconduct between November 2020 and March 2024 while representing three separate clients.

### A. Hunter committed numerous infractions while representing Wills

{¶ 4} In November 2020, Kerry Hanawalt retained Hunter to file a motion seeking the early release of her incarcerated brother, James T. Wills. Hunter accepted a flat fee of $2,500 for the representation, but the fee was not designated as "earned upon receipt," nor did Hunter tell Hanawalt that she would be able to get a refund if the work was not completed. Hunter did not deposit the check Hanawalt sent into a designated client trust account, because he did not have one at the time.

{¶ 5} Hunter inaccurately advised Hanawalt as to when Wills would be eligible to file a motion for early release, failed to tell Hanawalt that the time for a direct appeal had already expired, and falsely suggested that Wills's sentence could be reduced if the victim's family agreed. Hunter did not file a notice of appearance or any motion on Wills's behalf until April 5, 2023—more than two years after Hanawalt hired him.

{¶ 6} Meanwhile, from December 2020 through April 2021, Hanawalt sent Hunter four text messages seeking an update on the case. Hunter responded to the first two texts by reassuring Hanawalt that he was still planning to visit Wills in prison but that COVID-19 restrictions had prevented him from doing so. Hunter never responded to the third text. In response to Hanawalt's fourth text, Hunter lied, claiming that he was waiting to receive discovery before visiting Wills. Thereafter, on May 10, Hanawalt asked Hunter for a refund; two weeks later, Hunter responded that he had been busy with another matter and that he wanted to meet Hanawalt within seven days. They scheduled a meeting for 4:00 p.m. on June

at Hanawalt's residence. On that day, Hunter arrived for the meeting four hours late.

**{¶ 7}** Two months later, in August 2021, Hanawalt received from Hunter's phone a text message purportedly sent by a paralegal named "Yolanda Harris." The message falsely asserted that Hunter had filed an unspecified motion on Wills's behalf. Hunter admits that he authored the message purportedly sent by "Harris," and relator could find no evidence indicating that a Yolanda Harris ever worked for Hunter. The next month, after Hanawalt texted Hunter requesting another update, Hunter lied again, stating that he had convinced the prosecutor not to oppose the supposed motion.

**{¶ 8}** Between that September 21, 2021 response and April 4, 2023, Hunter failed to provide Hanawalt with any updates; she texted him three times but received no response. On December 28, 2022, she filed a grievance with relator, who then sent Hunter a letter of inquiry.

**{¶ 9}** Finally, on April 4, 2023, Hunter left Hanawalt a lengthy voicemail message in which he gave a series of excuses for his long delay and informed her that he had already filed a motion for reconsideration of Wills's sentence. The next day, the clerk of courts accepted Hunter's motion, which was six sentences long and bereft of any legal citations. Thereafter, Hanawalt informed Hunter that she and her brother wanted to terminate Hunter's representation, and she reiterated her May 2021 request for a full refund. Hunter promptly replied that he had already filed the motion but would send the refund anyway as soon as she provided her address. Hanawalt immediately provided her address to Hunter, but he did not issue the promised refund.

**{¶ 10}** Relator followed up with Hunter on September 20, 2023, asking whether he was willing to provide Hanawalt with a refund. The next day, Hanawalt received from Hunter's phone a text message purportedly sent by "Harris" alleging that Hunter had sent a check "a couple of years ago" but that it had been returned

4

because Hanawalt had not signed for it. The message asked for Hanawalt's address so that a new check could be issued. Six days later, Hunter responded to relator's request that he issue a refund, stating that he had tried to send a check to Hanawalt by certified mail but that it was returned by the postal service. He stated that he had texted and called Hanawalt as soon as the check was returned but that he had received no response. On September 30, 2023, Hunter finally provided Hanawalt with a full refund.

{¶ 11} Based on these facts, the parties stipulated, and the board found, that Hunter's actions violated six professional-conduct rules: Prof.Cond.R. 1.1. (requiring a lawyer to provide competent representation to a client), 1.3 (requiring a lawyer to act with reasonable diligence in representing a client), 1.4(a)(3) (requiring a lawyer to keep a client reasonably informed about the status of a matter), 1.15(a) (requiring a lawyer to hold the property of clients in an interest-bearing client trust account, separate from the lawyer's own property), 8.1(a) (prohibiting a lawyer from knowingly making a false statement of material fact in connection with a disciplinary matter), and 8.4(c) (prohibiting a lawyer from engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation). We adopt these findings of misconduct.

### B. Hunter committed additional misconduct while representing Gibson

{¶ 12} Lillian Lancaster hired Hunter in June 2023 to defend her son, Miles Gibson, in two separate cases against charges of murder, aggravated murder, aggravated robbery, tampering with evidence, and possession of a weapon while under a disability. Hunter charged Gibson $12,500. The flat fee was not designated as "earned upon receipt." Lancaster paid by check toward the end of the month, but Hunter did not deposit the check into a client trust account.

{¶ 13} Hunter entered an appearance on Gibson's behalf but did not appear at Gibson's first hearing, scheduled for July 10, or at the rescheduled hearing on

August 22. At the August 22 hearing, the court ordered Hunter to appear at a show-cause hearing on September 20.

{¶ 14} On August 23, Hunter appeared in court with the excuse that he had missed the previous day's hearing because he was out of town at his mother-in-law's funeral. The court continued the cases until October 11 and rescheduled the show-cause hearing for September 5. The bailiff and the order both informed Hunter that at the hearing, he would need to provide proof of his travel or funeral attendance.

{¶ 15} Hunter initially stipulated that he did not appear at the September 5 show-cause hearing, though at the hearing before the panel, he walked back this stipulation, claiming that he appeared but the judge was not there. The court rescheduled the hearing for September 20. After Hunter also failed to appear at a September 13 psychiatric hearing for Gibson, the court sent Hunter a letter informing him that his attendance at the September 20 show-cause hearing was mandatory.

{¶ 16} At the September 20 show-cause hearing, Hunter alleged that he had last met with Gibson a week earlier. When the court confronted Hunter with proof that he had not visited the jail since July 10, he alleged that the sheriff's records were inaccurate. Though Hunter still takes issue with them, the prison records show that Hunter visited Gibson on three dates before the September 20 hearing: June 17, June 27, and July 10. The court ordered Hunter to provide proof by October 11 of any additional visits to Gibson. The court also reiterated that Hunter would have to provide proof that he had attended the out-of-town funeral as he had claimed. Hunter agreed but stated that it was actually his friend's, not his mother-in-law's, funeral.

{¶ 17} Hunter failed to provide proof of his travel, funeral attendance, or additional jail visits by October 11 as ordered. The court gave him two more days. But Hunter ultimately provided nothing more than a photograph of his wife's

luggage tag from an August 21 flight. On November 16, the court disqualified Hunter from Gibson's cases and filed a grievance with relator.

{¶ 18} Two weeks later, Lancaster received notice that the court had removed Hunter from Gibson's cases. When Hunter next spoke with Lancaster, he did not tell her why he was removed. He later told her that he would file a motion to be reinstated as Gibson's counsel, but he never did so. He also never told Gibson that he no longer was representing him. And at the time of his disciplinary hearing, he had not refunded any of the $12,500 fee.

{¶ 19} Based on these facts, the parties stipulated, and the board found by clear and convincing evidence, that Hunter's actions in this matter violated seven professional-conduct rules: Prof.Cond.R. 1.3, 1.4(a)(3), 1.15(c) (requiring a lawyer to deposit advance legal fees and expenses into a client trust account, to be withdrawn by the lawyer only as fees are earned or expenses incurred), 1.16(e) (requiring a lawyer to promptly refund any unearned fee upon the lawyer's withdrawal from employment), 3.3(a)(1) (prohibiting a lawyer from knowingly making a false statement of fact or law to a tribunal), 8.4(c), and 8.4(d) (prohibiting a lawyer from engaging in conduct that is prejudicial to the administration of justice). We adopt these findings of misconduct.

## C. Hunter's pattern of misconduct continued while representing Derek Shaffer

{¶ 20} Vicki Deitenbeck and Jack Shaffer hired Hunter in March 2021 to assist with postconviction matters for their son, Derek C. Shaffer, who was convicted of multiple offenses in October 2018. They paid Hunter $2,500 in cash. Hunter did not deposit the fee into a client trust account, nor did he provide a written fee agreement. Hunter failed to explain to Derek's parents that the time for direct appeal had expired. Rather, he assured Derek's parents that he would appeal the case "all the way to the Supreme Court" because he was so convinced of their son's innocence.

**{¶ 21}** After Hunter received the case file from Derek's former lawyer on June 25, 2022, Hunter stopped communicating with Derek's parents. Between July 13, 2022, and February 7, 2024, Deitenbeck sent Hunter a series of text messages seeking updates on the case. Hunter failed to respond at all to at least 12 of these messages. Though Hunter occasionally responded appropriately, the vast majority of his responses to Deitenbeck's texts were severely deficient for several reasons. First, at least one response expressed anger toward her. Second, in at least three texts, Hunter lied about actions he had taken in the case. Finally, at least nine texts were purportedly sent by "Harris," but Hunter later admitted that he had sent them.

**{¶ 22}** Hunter repeatedly assured Derek's parents that he would meet with Derek. Although he ended up visiting Derek five times in person, those visits did not begin until May 18, 2023—over two years after Hunter accepted payment for the representation. In addition, while prison call logs show that Derek placed 1,283 calls to Hunter in the course of Hunter's representation, Hunter accepted only eight calls, for a total of 38 minutes. Ultimately, Hunter did not file an appearance in Derek's case until 18 months after he agreed to represent Derek. Hunter filed no other pleading in the case.

**{¶ 23}** On February 7, 2024, Deitenbeck filed a grievance against Hunter with relator. After relator sent Hunter a letter of inquiry, Hunter still failed to respond to one text message from Deitenbeck. At the end of February, Hunter called Deitenbeck. After discussing the case, he asked Deitenbeck to contact relator's office to withdraw her grievance. At the time of his disciplinary hearing, Hunter had not refunded any portion of the $2,500 he had accepted to represent Derek.

**{¶ 24}** The parties stipulated, and the board found by clear and convincing evidence, that Hunter's actions in this matter violated six professional-conduct rules: Prof.Cond.R. 1.1, 1.3, 1.4(a)(3), 1.15(a), 8.4(c), and—based on his attempt to have Deitenbeck withdraw her grievance—8.4(h) (prohibiting a lawyer from

8

engaging in conduct that adversely reflects on the lawyer's fitness to practice law). We adopt these findings of misconduct and agree that Hunter's request that Deitenbeck withdraw her grievance falls within the catchall provision of Prof.Cond.R. 8.4(h). *See Disciplinary Counsel v. Bricker*, 2013-Ohio-3998, ¶ 21.

## II. ASSESSING THE SANCTION

{¶ 25} When imposing sanctions for attorney misconduct, we consider all relevant factors, including the ethical duties that the attorney violated, the aggravating and mitigating factors listed in Gov.Bar R. V(13), and the sanctions imposed in similar cases.

{¶ 26} There is no doubt that Hunter's long list of lies and deficiencies in communication with his clients violated the ethical duties articulated in several professional-conduct rules. His failures to act promptly or seek help from other lawyers while representing Wills, Gibson, and Derek Shaffer reflect a serious lack of the competence and diligence that are cornerstones of the legal profession. His frequently delayed or entirely nonexistent communication with clients and his outright lies both to them and to a court harm the trust that is at the core of any client relationship and the public perception of the legal profession. *See* A Lawyer's Creed, Gov.Bar R. Appendix V ("I recognize that my actions and demeanor reflect upon our system of justice and our profession, and I shall conduct myself accordingly."). Based on his admissions, we find that Hunter is aware of and rightly embarrassed by the gravity of his misconduct.

{¶ 27} In addition to Hunter's misconduct, the parties stipulated and the board found that six aggravating factors exist. First, Hunter has been disciplined before: we suspended him for a day for his failure to register and pay his attorney-registration fee in 2009. *See* Gov.Bar R. V(13)(B)(1). Second, Hunter stipulated that he had acted with a dishonest or selfish motive. *See* Gov.Bar R. V(13)(B)(2). Third, Hunter committed multiple infractions. *See* Gov.Bar R. V(13)(B)(4). Fourth, those infractions display a pattern of misconduct stretching over several

years.  *See* Gov.Bar R. V(13)(B)(3).  Fifth, Hunter stipulated that he had made false statements and acted deceptively during the disciplinary process.  *See* Gov.Bar R. V(13)(B)(6).  Finally, Hunter stipulated that his clients were vulnerable at the time of his misconduct and that his actions harmed them.  *See* Gov.Bar R. V(13)(B)(8). Balancing against these aggravating factors, the board found just one mitigating factor: Hunter cooperated in the disciplinary proceedings.  *See* Gov.Bar R. V(13)(C)(4).

{¶ 28} "[A]ttorneys who engage in a course of conduct involving dishonesty, fraud, deceit, or misrepresentation will be actually suspended from the practice of law for an appropriate period."  *Disciplinary Counsel v. Proctor*, 2012-Ohio-684, ¶18, citing *Disciplinary Counsel v. Fowerbaugh*, 1995-Ohio-261, ¶16. It takes an "abundance of mitigating evidence" to "justify a lesser sanction." *Disciplinary Counsel v. Markijohn*, 2003-Ohio-4129, ¶8.

{¶ 29} The board recommends that Hunter be suspended from the practice of law in Ohio for two years with the final six months of his suspension stayed on the conditions that he repay Derek Shaffer's parents the $2,500 they paid him, repay Lancaster the $12,500 she paid him, and pay the cost of these proceedings.  The board also recommends that as a condition of reinstatement, we require Hunter to submit to an OLAP assessment and comply with any treatment and counseling recommendations resulting from that assessment.

{¶ 30} In reaching its recommended sanction, the board considered three cases that each involved misconduct similar to Hunter's—that is, a pattern of violations involving serious shortcomings in competence, diligence, care of client funds, and/or truthfulness.  We agree that these cases serve as apt, if imperfect, comparisons.

{¶ 31} In *Disciplinary Counsel v. Cheselka*, 2019-Ohio-5286, we suspended Cheselka for two years with one year conditionally stayed.  Cheselka committed 19 rule violations, which included his failures to timely appeal a client's

judgment of conviction, file a motion for leave to file a delayed appeal, return the client's phone calls, timely respond to requests to discuss the case, and deposit the fee in an appropriate client trust account. Cheselka, unlike Hunter, did not cooperate in the disciplinary proceedings. *See id.* at ¶ 29. On the other hand, Hunter, unlike Cheselka, has been disciplined before and has not presented evidence of his good character and reputation. *See id.* at ¶ 30.

**{¶ 32}** In *Disciplinary Counsel v. Talikka*, 2013-Ohio-1012, we suspended another attorney for two years, with one year conditionally stayed, and required him to serve one year of monitored probation upon reinstatement. Talikka committed 38 violations of a nature similar to those here. Unlike Hunter, Talikka had no prior discipline and presented evidence of his good character. *See id.* at ¶ 14.

**{¶ 33}** Finally, in *Disciplinary Counsel v. Shaaban*, 2023-Ohio-3671, we suspended an attorney for two years, with one year conditionally stayed, and required him to serve 18 months of monitored probation upon his reinstatement. Shaaban had committed 26 violations largely similar to the 19 at issue in this case. In contrast to Hunter, however, Shaaban demonstrated no dishonest motive and had not previously been disciplined. *See id.* at ¶ 37.

**{¶ 34}** Hunter's case is similar to, but slightly more serious than, *Cheselka*, *Talikka*, and *Shaaban*. Hunter lied not only to his clients but also to a court. His actions included a pattern of using a fictitious paralegal's identity when sending text messages responding to clients' requests for updates on the status of their cases. Hunter's choice to lie to a judge about his whereabouts when he should have been present for a criminal hearing demonstrates a patent lack of fitness to practice law. Although we will entertain a sanction less severe than an actual suspension when mitigating factors abound, Hunter presented just one mitigating factor: his cooperation in the disciplinary proceeding, and the weight of that factor is limited by his equivocating and attempting to walk back one of his stipulations at the

disciplinary hearing. The six aggravating factors present here suggest the need for a sanction more severe than those imposed in other cases involving similar misconduct in order to protect the public from future acts of dishonesty.

## III. CONCLUSION

{¶ 35} Accordingly, Jeffrey Dwight Hunter is suspended from the practice of law in Ohio for two years with the last six months stayed on the conditions that he (1) pay Vicki Deitenbeck and Jack Shaffer restitution of $2,500 within 90 days, (2) pay Lillian Lancaster restitution of $12,500 within 90 days, and (3) pay the costs of these proceedings. If Hunter fails to comply with any of these conditions, the stay will be revoked and he will serve the full two-year suspension. In addition to the requirements for reinstatement set forth in Gov.Bar R. V(24), Hunter shall be required to submit proof that he has submitted to an OLAP assessment and has complied with any treatment and counseling recommendations resulting from that assessment. Costs are taxed to Hunter.

Judgment accordingly.

————————————

**KENNEDY, C.J., concurring in part and dissenting in part.**

{¶ 36} Respondent, Jeffrey D. Hunter, committed 19 violations of the Rules of Professional Conduct, including a pattern of lying to and stealing from vulnerable clients over several years and lying to a tribunal. For those violations, the Board of Professional Conduct recommends that we suspend Hunter from the practice of law for two years with six months conditionally stayed. A majority of this court agrees.

{¶ 37} I agree with the majority's findings of fact, except for the finding that Hunter cooperated in the disciplinary proceedings. The majority adopts the board's contradictory findings that Hunter cooperated in the disciplinary proceedings and that he lied to relator, disciplinary counsel. In my view, a finding that an attorney lied to the relator during its investigation precludes a finding that

12

the attorney cooperated in the disciplinary proceedings. I also agree with the majority that Hunter should repay his clients the money he stole.

{¶ 38} However, I part ways with the majority when it comes to the sanction it imposes. Based on this court's precedent—and our responsibility to protect the public—the appropriate sanction in this case is permanent disbarment. Accordingly, I concur in part and dissent in part.

## I. LAW AND ANALYSIS

### A. Introduction

{¶ 39} "Each disciplinary case involves unique facts and circumstances." Gov.Bar R. V(13)(A). When reviewing cases involving similar attorney misconduct and similar aggravating and mitigating factors, we apply our precedent to ensure a fair and equitable disciplinary system. *Disciplinary Counsel v. Nowicki*, 2023-Ohio-3079, ¶ 35 (Kennedy, C.J., concurring in part and dissenting in part). "The primary purpose of attorney discipline 'is not to punish the offender, but to protect the public.'" *Nowicki* at ¶ 82 (Kennedy, C.J., concurring in part and dissenting in part), quoting *Disciplinary Counsel v. O'Neill*, 2004-Ohio-4704, ¶ 53. Accordingly, we must determine whether the person this court has admitted to the bar "'is a proper person to be continued on the roll.'" *Disciplinary Counsel v. Trumbo*, 1996-Ohio-386, ¶ 12, quoting *Ex parte Brounsall*, 98 Eng.Rep. 1385 (1778).

### B. Our Applicable Precedent

{¶ 40} Hunter committed 19 violations of 11 professional-conduct rules, resulting in a pattern of misconduct affecting three clients over more than three years. He accepted payment from vulnerable clients without performing the work they had paid him to perform, lied to his clients about the work he had done in their cases, lied to a court, and failed to deposit client funds into an Interest on Lawyers' Trust Account (IOLTA). Additionally, while defending himself during the disciplinary process, he submitted false evidence.

13

**{¶ 41}** In each of the cases discussed below, this court disbarred attorneys for committing misconduct similar to Hunter's.

*1. Neglect of Client Matters that is Tantamount to Theft from a Client*

**{¶ 42}** Over 40 years ago, this court recognized that the "failure on the part of an attorney to do the work for which a client has paid him a fee is tantamount to theft of that fee from the client." *Disciplinary Counsel v. Sigall*, 14 Ohio St.3d 15, 17 (1984); *accord Cincinnati Bar Assn. v. Weaver*, 2004-Ohio-2683, ¶ 16 ("Taking retainers and failing to carry out contracts of employment is tantamount to theft of the fee from the client."). This court has also consistently held that "the normal sanction for misappropriation of client funds coupled with neglect of client matters is disbarment." *Cleveland Bar Assn. v. Glatki*, 2000-Ohio-354, ¶ 16; *accord Weaver* at ¶ 16. Whether that "normal sanction" is appropriate in a particular case depends on "not only the duty violated, but also the lawyer's mental state, the injury caused, and whether mitigating factors exist," *Cincinnati Bar Assn. v. Komarek*, 1998-Ohio-312, ¶ 32, and, if so, the strength of the mitigating evidence, *see Disciplinary Counsel v. Markijohn*, 2003-Ohio-4129, ¶ 8. For example, attorneys with no prior misconduct whose actions would otherwise support disbarment might show that their commitment to community service indicates their potential for rehabilitation. *See Ohio State Bar Assn. v. Johnson*, 2002-Ohio-3998, ¶ 7.

**{¶ 43}** On the other hand, disbarment may be warranted even when the failure to return payment followed the neglect of just one or two client matters. For example, in *Cleveland Bar Assn. v. Helfgott*, an attorney committed misconduct in two client matters. 2006-Ohio-2579. One client had hired Helfgott to file a foreclosure action. Helfgott accepted payment and told the client to expect a judgment within a couple of months. In reality, Helfgott never filed the complaint, did not respond to the client's inquiries about the status of the case, and then failed to return his fee to the client. The other client, who suffered from multiple sclerosis, hired Helfgott to represent her in a bankruptcy matter. Helfgott sent her a different

14

client's bankruptcy petition and never ended up filing a petition for her.

{¶ 44} The board found multiple aggravating factors, and we adopted the board's findings that Helfgott had acted with a selfish motive, displayed a pattern of misconduct, failed to cooperate in the disciplinary process, harmed a vulnerable client, and failed to make restitution. *Id.* at ¶ 14. The failure-to-cooperate aggravating factor was based on the facts that Helfgott never answered the relator's letters of inquiry and that he failed to appear for a deposition in connection with the investigation. As for mitigating factors, we adopted the board's finding that Helfgott did not have a disciplinary record. *Id.* Based on these circumstances, this court permanently disbarred him. *Id.* at ¶ 18.

{¶ 45} In cases of neglect, disbarment is warranted even in the absence of a failure to repay fees paid by clients for work not done. For example, in *Toledo Bar Assn. v. Auwaerter*, we disbarred an attorney who neglected multiple client matters. 69 Ohio St.2d 85 (1982). Auwaerter's neglect included failing to timely file a claim for workers' compensation; to timely file a personal-injury complaint; to take actions necessary in a corporate-acquisition matter; to amend a medical-malpractice complaint, resulting in its dismissal; and to give a client her settlement check in a personal-injury matter. This court adopted the board's recommendation to disbar Auwaerter for failing to "'maintain a degree of personal and professional integrity that meets the highest standard.'" *Id.* at 86, quoting *Cleveland Bar Assn. v. Stein*, 29 Ohio St.2d 77, 81 (1972).

### 2. Dishonesty

{¶ 46} Disbarment is also "the presumptive sanction for misappropriation of client funds and dishonesty." *Cuyahoga Cty. Bar Assn. v. Maybaum*, 2006-Ohio-6507, ¶ 24, citing *Disciplinary Counsel v. France*, 2002-Ohio-5945, ¶ 11. For example, in *Disciplinary Counsel v. Lentes*, the relator charged an attorney with six violations of the Rules of Professional Conduct committed in three client matters. 2008-Ohio-6355. In the first matter, Lentes falsely told his client that he had filed

a complaint on the client's behalf. He even went so far as to bring the client to a fictitious hearing where he instructed the client to wait outside the courtroom. Lentes also faked a judgment entry and forged a judge's signature in an attempt to show a ruling in the client's favor.

**{¶ 47}** In another matter, a couple hired Lentes to assist them in adopting their teenaged grandson. Lentes's secretary told the clients in November 2005 that Lentes had filed the adoption petition, but Lentes did not actually file the petition until the next August. Lentes also gave his clients a date for a fictitious hearing, which they appeared for, but he did not. Eventually, the probate court scheduled a real hearing but had to cancel it because Lentes never served a necessary party. The clients asked for a refund, and Lentes mailed them a check that was dishonored. At the time of his disciplinary hearing, Lentes had not refunded the fee to the clients. Because their grandson had turned 18, the clients were unable to collect Social Security benefits—money that they would have received before the grandson's 18th birthday, which they wanted to put toward his college education.

**{¶ 48}** In the final matter, a client hired Lentes to obtain an easement on her neighbor's property. He instructed the client to attend multiple fictitious hearings and falsely told her that her case could not go forward because the opposing party had appealed.

**{¶ 49}** This court held that Lentes failed to cooperate in the disciplinary process, making disbarment "the only appropriate sanction for [his] multiple acts of dishonesty and his callous disregard of responsibility to his clients, the judicial system, and the legal profession," *id.*, 2008-Ohio-6355, at ¶ 33.

### C. Applying Our Precedent to this Case

**{¶ 50}** Hunter's violations are similar to the violations committed in *Helfgott*, 2006-Ohio-2579, *Auwaerter*, 69 Ohio St.2d 85, and *Lentes*.

**{¶ 51}** Hunter stole from clients. Like Helfgott, Hunter, after accepting fees from clients, failed to perform the work clients had paid him to do—which is theft.

Also, like Helfgott, Hunter had a selfish motive, harmed a vulnerable client, and failed to make restitution. *See Helfgott* at ¶ 14. But unlike Helfgott, who harmed only two clients, Hunter harmed three clients over three years.

**{¶ 52}** And although the board found as a mitigating factor that Hunter had cooperated in the disciplinary process, it contradicted itself in also finding that he had lied to the board. Hunter's violations of the Rules of Professional Conduct exceed Helfgott's, further justifying Hunter's disbarment.

**{¶ 53}** Similarly, like Auwaerter, Hunter repeatedly neglected client matters. After noting in *Auwaerter* that the attorney had failed to perform work that clients hired him to do in five separate matters, this court held—without noting aggravating or mitigating factors—that his violations warranted disbarment. 69 Ohio St.2d at 87. This case presents aggravating factors that provide additional support for disbarment: Hunter has been disciplined before, *see* Gov.Bar R. V(13)(B)(1); had a selfish motive, *see* Gov.Bar R. V(13)(B)(4); committed multiple infractions, *see* Gov.Bar R. V(13)(B)(3), engaging in a pattern of misconduct, *see* Gov.Bar R. V(13)(B)(3); harmed vulnerable clients, *see* Gov.Bar R. V(13)(B)(8); and lied during the disciplinary process, *see* Gov.Bar R. V(13)(B)(6). Moreover, at the time of his disciplinary hearing, Hunter had not refunded some of his clients for the work they originally hired him to perform, *see* Gov.Bar R. V(13)(B)(9). The aggravating factors elevate the egregiousness of Hunter's misconduct beyond Auwaerter's, warranting Hunter's disbarment.

**{¶ 54}** Finally, like Lentes, Hunter neglected three client matters, lied to his clients, and failed to return fees he charged clients for work that he did not perform. *See Lentes*, 2008-Ohio-6355. And neither Hunter nor Lentes cooperated in the disciplinary process. *See id.* at ¶ 34. This court disbarred Lentes because of his pattern of dishonesty and neglect of client matters. *Id.* at ¶ 33. Likewise, we should disbar Hunter.

**{¶ 55}** The above cases establish the proposition that disbarment is the

presumptive and appropriate sanction for accepting fees despite failing to perform the work and for neglecting client matters and lying to clients. Hunter misappropriated funds, neglected client matters, and repeatedly lied, warranting his disbarment. *See Cincinnati Bar Assn. v. Schwartz*, 2003-Ohio-1635, ¶ 15 (holding that an attorney's "conduct of neglecting entrusted legal matters, engaging in a continuous course of deceit involving the misappropriation of clients' funds, failing to make restitution, and failing to cooperate in the investigation of grievances warrants disbarment"); *Greene Cty. Bar Assn. v. Fodal*, 2003-Ohio-5852, ¶ 32 (disbarring attorney who "routinely took his clients' money and provided nothing in return," failed to present compelling mitigating evidence, and disregarded the disciplinary process).

{¶ 56} "The appropriate analysis when this court has established a presumptive sanction for certain misconduct is to 'begin with the presumptive sanction' and determine whether there is any reason not to impose it." *Disciplinary Counsel v. Ferfolia*, 2022-Ohio-4220, ¶ 41 (Kennedy, J., dissenting), quoting *Cleveland Bar Assn. v. Harris*, 2002-Ohio-2988, ¶ 9 (Cook, J., dissenting). Hunter has not presented any mitigating evidence that suggests that this court should temper the presumptive sanction of disbarment.

### D. The Majority's Cases Are Distinguishable

{¶ 57} The majority relies on three cases to reach Hunter's sanction: *Disciplinary Counsel v. Cheselka*, 2019-Ohio-5286, *Disciplinary Counsel v. Talikka*, 2013-Ohio-1012, and *Disciplinary Counsel v. Shaaban*, 2023-Ohio-3671.

{¶ 58} In *Cheselka*, the relator charged the attorney with 19 rule violations for misconduct that included filing a motion and a notice of appeal late. This court suspended Cheselka from the practice of law for two years with the second year conditionally stayed. *Cheselka* at ¶ 37. Although Hunter committed some of the same violations and many of the same aggravating factors exist here, *see id.* at ¶ 29, Cheselka presented significant mitigating evidence: the absence of prior

discipline, letters commending his good character and service to his community as a low-cost criminal-defense attorney, and the stress he experienced in caring for his parents, *see id.* at ¶ 30. Hunter, in contrast, has not presented any mitigating evidence.

{¶ 59} The majority also relies on *Talikka*, in which the attorney violated 12 professional-conduct rules by failing to diligently represent clients, mishandling client funds, and failing to have contingency-fee clients sign closing statements. This court suspended Talikka from the practice of law for two years, conditionally staying one year. *Talikka* at ¶ 21.

{¶ 60} Talikka performed some of the work clients had hired him to do. Hunter, on the other hand, completely failed to perform work clients had hired him to perform, lied to those clients, lied to a court, and lied to disciplinary counsel. Additionally, unlike Hunter, Talikka presented evidence of several mitigating factors by submitting letters attesting to his good character as well as proof that he had voluntarily participated in the Ohio Lawyers Assistance Program, suffered from health problems, undergone a psychological evaluation, and taken responsibility for his actions. *Id.*, 2013-Ohio-1012, at ¶ 14, 20-21. In contrast, Hunter—as the majority concedes—"walked back" at least one of his stipulations. Majority opinion, ¶ 15.

{¶ 61} Lastly, the majority relies on *Shaaban*, 2023-Ohio-3671. Shabaan violated 26 professional-conduct rules—like here, rules involving neglecting client matters, lying to opposing counsel, and lying to a tribunal. Ultimately, this court suspended him from the practice of law for two years with one year conditionally stayed. *Id.* at ¶ 56.

{¶ 62} There are multiple differences, however, between *Shaaban* and this case. For example, Shaaban lied to a court once, stating that he needed to continue a hearing because the client had a surgery scheduled for that day, but Hunter lied to a court twice when explaining his failure to attend a hearing, stating first that he

had been at his mother-in-law's funeral, then changing his story by stating that he actually had been at a friend's funeral. Furthermore, Hunter submitted fabricated evidence to attempt to support his lie; Shaaban did not. Finally, there is no evidence here indicating that outside factors affected Hunter's conduct, that he took responsibility for his misconduct, or that he is taking steps to prevent future neglect of client matters.

## II. CONCLUSION

{¶ 63} The record does not justify departing from the presumptive sanction that we impose when an attorney failed to perform work in client matters, failed to repay the clients the fees they paid for that work, and lied to clients and tribunals. Therefore, although I generally agree with the majority's findings of fact, I dissent in part and would permanently disbar Hunter from the practice of law.

_____

**FISCHER, J., concurring in part and dissenting in part.**

{¶ 64} I join the first opinion concurring in part and dissenting in part, except for Parts I(C) and II. Based on my reading of the case law, I would impose an indefinite suspension rather than permanent disbarment in this case. Accordingly, I concur in part and dissent in part.

_____

Joseph M. Caligiuri, Disciplinary Counsel, and Melanie J. Williamson, Assistant Disciplinary Counsel, for relator.

Jeffrey Dwight Hunter, pro se.

_____